JOHN H. STARIN, Jr., Appellant, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

Where an attorney is employed, without agreement as to compensation, to bring a great number of actions, alike in their nature, involving no complicated questions of law and only the most simple questions of fact; which actions are disposed of by obtaining judgments by default or otherwise without contest, there is no rule of law which makes, as against his client, the taxable costs the measure of compensation to which he is entitled for his services. He is simply entitled to what it can be shown the services are reasonably worth under the circumstances.

It seems that since the passage of the Code, there is no rule of law which in any case makes the compensation of the attorney necessarily co-extensive with the taxable costs, in the absence of an agreement.

Scott v. Elmendorf (12 Johns. 315); Brady v. Mayor, etc. (1 Sand. Sup. Ct. Rep., 569); Rooney v. S. A. R. R. Co. (18 N. Y. 368), distinguished.

(Argued May 5, 1887 ; decided June 7, 1887.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made April 10, 1882, which reversed a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*A. J. Vanderpoel* for appellant. On the employment of an attorney in a suit the law presumes a promise to pay him a compensation for his services measured by the statutory costs as taxable between party and party, and if the employer relies upon an agreement for a lower rate, the burden is made to show such agreement. (*Brady* v. *Mayor, etc.,* 1 Sanf. Super. 569, 592; *Richardson* v. *Brooklyn City R. R. Co.,* 15 Abb. 342; *Scott* v. *Elmendorf,* 12 Johns. 315).

*David J. Dean* for respondent.

PECKHAM, J. The plaintiff sues as assignee of one who was appointed by the excise commissioners of New York their attorney to prosecute actions for violations of the excise laws in their county.

He was appointed such attorney in 1858, but only actively commenced his work in 1859, and from then until 1863 his whole time, he says, was taken up in this business, but more actively at the commencement of the season when the board would meet. From 1863, his services were so slight that he did not keep a book and it was not worth making even a memorandum of the amount of costs collected by him. His active work was thus shown to have been included within about the period of four years. The amount of the work done may be thus summarized : He commenced 14,915 actions for violations of the law by selling liquor without a license. The names of the defendants were reported to him from the commissioners of excise, with the dates of the alleged violations, and he then filled in such names and dates in blank summons and complaints which required only such names and dates to make a perfect writ and pleading. Five minutes spent in this business was ample to fill out each case and indorse it, etc. In 8,656 of such actions the defendants appeared, a majority by one attorney, and put in answers which were simply general denials. In 1,054 of these actions judgments were taken by default on application to the court and executions issued thereon. In 1,243 of the actions notices of trial were given and they were placed on the calendar and remained thereon

twelve terms, although after the trial of four or five the judges refused to try any more, and none were tried, and the evidence shows pretty conclusively that they were not necessarily on the calendar nor did they require any attention, owing to an understanding that they were not to be moved until a test case had been decided by the Court of Appeals, and they never were moved.

The county paid the disbursements for printing, for county clerk's and for sheriffs' fees. The whole sum disbursed by the attorney for clerk hire and every other expense amounted to between $3,000 and $4,000. There was no agreement between the attorney and the board as to compensation. He collected and appropriated to his own use, of costs and penalties in these actions, the sum of $10,000.

This is the character of the services performed by the attorney, and their amount has been thus substantially detailed, and upon this branch there was no contradictory evidence.

The plaintiff to prove their value called six witnesses, one of whom had been one of the commissioners of excise during the time inquired about, and they said that in their opinion, in the absence of any agreement, the attorney was entitled to be compensated at the rate of the statutory costs, and that the number of the cases would not alter their view of the matter in the least; that if it was worth that sum for one case it was for 14,000. One witness seemed to regard the matter much in the same light as if the attorney had discovered a gold mine, and was entitled to the rewards of his good fortune. He thought that if 200 suits were commenced in one day (in the manner above described by the mere filling in of a name and a date in blanks left for that purpose), it was worth $10 in each suit, and therefore, $2,000 a day for that service would be a fair and reasonable charge against the county. He said he looked at the whole thing; "it would only occur once in his life probably." At the same time he said, that an attorney capable of doing this business, could probably have been hired by the year for from $1,500 to $2,000. This he subsequently explained by saying he meant

one could be hired for that sum, who superadded to his cleri-
cal ability a sufficient quantity of character to entrust. him
with the charge of the papers in the office — not performing
the "brain work," but the mere manufacture of the paper
after he had been advised by the counsel in the case. The
compensation which this witness would award, including
$2,000 per day for the commencement of 200 suits, and
$12,000 a month for term fees, for cases on the calendar
which required no attention, and other things in like propor-
tion, the witness said he regarded as compensation for the
attorney, for "him for the moments of leisure in his life spent
in the acquiring of sufficient knowledge to carry on and con-
duct a prosecution successfully through." Another witness
who estimated the same amount of $10 for a term fee in each
case, which would amount to $12,000 a month, said such
amount was in his opinion fair and just even when nothing
was done in the causes, they being simply on the calendar
and requiring no watching, so long as he had cases enough to
make up such total at the specified sum for each. He said in
regard to all the servcies for which he gave an opinion as to
their value, that he did not regard them "as services which
involve the question of ability or professional skill," and that
was the reason he gave the answer he did, which was that
services of a skilled nature should be compensated more
liberally in the case of an experienced lawyer than another,
but that for such services, as this attorney performed, he
would make no difference in the compensation so far as
regarded any reputable member of the bar. The matter is
alluded to only to show what is indeed otherwise perfectly
plain, that even in the opinion of at least one of plaintiff's
witnesses the services of the attorney were not of a high grade,
certainly, of skilled labor.

The rest of the evidence for the plaintiff is of a like
nature, and based upon the same principles and reasoning
viz.: that however large might be the difference between
the taxable costs in all these cases and the amount for which
such services could have been obtained, by making an agree-

ment with a perfectly reputable and competent attorney in regard to it before hand, yet if that precaution happened to have been neglected such fact was entirely unimportant in forming an opinion as to the value of those services. It is to be gathered that this surprising fact was based upon the belief of the plaintiff's witnesses that, in the absence of an agreement, the attorney was entitled to be compensated for his services in any and in all cases, no matter how great their number, at the rate of the taxable costs in each case.

The defendants called thirteen witnesses, many of them among the leading members of the bar in New York city, and they one and all declared that while in the ordinary run of suits of a not very intricate nature the compensation of an attorney might be reasonably based upon the taxable costs in a case; yet in their judgment where the cases were of the simplest possible nature, and were of such an enormous number, and the labor involved was so largely reduced to that of mere machinery, as in the cases under discussion, the compensation under such circumstances at the rate of taxable costs was enormously extravagant, and each one gave his opinion as to the value of such services, taking it as an employment by the year (as the attorney was appointed annually), and also judging of such value by considering it with reference to each suit.

The difference between the highest amount, as given by the defendants' witnesses, and the lowest, as measured by the plaintiff's witnesses, amounted to the difference between about forty or forty-five thousand and three hundred and thirteen thousand five hundred and seventy dollars. The referee signed a report for the sum last named, with interest, amounting in all (after deducting what the attorney had received) to the sum of $388,156.41, for which sum, with costs, judgment was entered. The defendants appealed, and the General Term of the Supreme Court reversed the judgment, as well upon the facts as the law, and so stated in its order of reversal. The plaintiff then appealed to this court from the order granting a new trial, and gave the usual stipulation.

The order of the General Term, reversing the judgment entered upon the report of the referee and granting a new trial, should be affirmed. The most limited construction ·of our power in reviewing questions of fact, arising as they do in this case by a reversal in the General Term of the findings of fact by a referee, is broad enough to permit and to compel an affirmance of the General Term order. The result arrived at by the referee ought to shock the common sense of every intelligent man. The idea that a lawyer of respectable character could by any possibility earn over $300,000 in the space of four or five years by services of a legal nature requiring no more legal ability than was involved in making out a summons and complaint and taking judgments by default in these excise cases, is a delusion simply, and any judicial tribunal that should determine it to be a fact would be absurdly at war with the truth and the common and universal experience of mankind.

As I have said, the testimony of plaintiff's witnesses seems to have been based upon the assumed law that if no bargain were made, the attorney was entitled to the taxable costs in every case.

As a mere measure of compensation for services as an attorney, performed in an ordinary case or in a very small number of such cases, that rule may be very well and may furnish, under such circumstances, a fair rate of compensation. But upon a question of compensation for services performed in an enormous number of cases involving no complicated questions of law, and only the most simple of all questions of fact, taxable costs granted in each case as a measure of compensation would make it most grossly excessive. I do not think there is, in truth, any general rule of law that, since the Code, makes the compensation of the attorney necessarily co-extensive with the taxable costs in the absence of an agreement. The counsel for the plaintiff cites, to prove that there is such a rule, certain cases, and among them *Scott* v. *Elmendorf* (12 Johns. 315), and *Brady*

v. *Mayor, etc.* (1 Sand. Sup. Ct. 569), and some cases in the Supreme Court since the Code.

The cases just above cited arose under the old fee bill, and do not touch the question under the Code. In *Rooney* v. *Railroad* (18 N. Y. 368) which was only a question as to an attorney's lien on a judgment under the Code, HARRIS, J. said as a mere expression of an opinion on a subject not decided by the court, that " in the absence of any agreement on the subject I suppose the sum recovered by the party as an indemnity for his expenses would be the measure of compensation allowed to the attorney." COMSTOCK, J., in the same case said : " It is not important now to determine what may be the implied agreement of the client with his attorney." That case is no authority for plaintiff's contention. There are some cases in the Supreme Court which say that *prima facie* the implied agreement is to pay at the rate specified by the statute. I assume this statement to mean that it is in the absence of every other fact which courts might think material in judging what the implied agreement was, and as thus construed no fault need be found with it as furnishing under such circumstances *prima facie* evidence of what is the reasonable value of the services. But this court has said what the implication is in case no special agreement was made. In *People* v. *Supervisors of Del. Co.* (45 N. Y. 196, at p 202), FOLGER, J. said : " By the Code (§ 303), the measure of such compensation is left to the agreement, express or implied, of the parties. There was no express agreement between the relator and the board of commissioners of excise what should be his compensation if it became a charge against the county. He should be paid then what his services were reasonably worth. Not according to what they produced to his client, but what such services in themselves considered were reasonably worth, looking at the labor, time, talent and skill expended in the bestowal of them." In *Van Every* v. *Adams* (42 Super. Ct. 126) the same rule is laid down, that the attorney in the absence of an agreement is entitled to recover what his services were reasonably worth. If this explanation of the

basis for the opinion of the plaintiff's witnesses be not accepted, and their testimony is to be construed as holding that the number, simplicity and perfect similarity of cases put in an attorney's hands by his client should have no weight in determining the principles upon which compensation is to be made, or its amount in each case, then such evidence disregards the general experience of men, which teaches all of us that in all dealings between man and man, whether of a mercantile or a professional nature, the mere fact of a large number of precisely similar things sold or services rendered, is one of the most important factors in its bearing both upon the price of the commodities sold and the amount of compensation for professional services. A lawyer who does all the business of a solvent client where the business amounts to a great deal, will of course take such fact into account in making up his charges, and to a still greater extent where the services were all of a similar nature and almost clerical in their character. Every lawyer knows this and has a right to remember it whether acting as a judge or referee. Looking at it in this light, the evidence for the plaintiff appears to have been given under a misapprehension of the law or else in defiance of facts which are known to every intelligent man, lawyer, judge or layman. Under such circumstances the evidence on the part of the plaintiff as to value appears to be worthless, and to be wholly overwhelmed by the evidence given on the part of the defendants.

The learned referee says that all the witnesses agree that in the absence of an agreement the reasonable and usual charge is, at least, the taxable costs. I have looked through the evidence very carefully and am unable to concur in that view. On the contrary there is a singular unanimity of dissent on the part of all the witnesses for defendants as to the existence of any such rule under the circumstances herein detailed. If the referee were at first inclined to believe that there was any such rule applicable to a case like this, when he saw the enormous proportions which the compensation based thereon would assume, he might well have paused and made

a most thorough review of his opinion as to the existence of any rule which in the application to the case before him would lead to so unprecedented an award.

In our judgment, based upon the whole case, the evidence was overwhelming in its nature and degree in favor of the contention of the defendants as to the value of the services performed by the plaintiff's assignor.

The order of the General Term, reversing the judgment in favor of plaintiff and granting a new trial, should therefore be affirmed with costs, and judgment absolute awarded against him upon his stipulation.

All concur.

Order affirmed and judgment accordingly.