LEO BRADY, STEWART LYNCH, JOSEPH B. KEENAN, GORDON, BRADY & KELLER, and FELDMAN & BARRETT,

Appellants,

*vs.*

THE PENNROAD CORPORATION, a corporation of the State of Delaware,

Appellee.

*Supreme Court, On Appeal, April 5, 1948.*

RICHARDS, C. J., and SPEAKMAN, TERRY, CAREY, and PEARSON, JJ., sitting.

*Leo Brady,* of New York City, *Joseph B. Keenan,* of Washington, D. C., *Stewart Lynch,* (Gordon, Brady & Keller and Feldman & Barrett, all of New York City, on brief), for appellants.

*James R. Morford,* and *Morris Wolf,* of Philadelphia, for appellee.

RICHARDS, Chief Justice, delivering the opinion of the court:

The origin of the Pennroad litigation and the various steps taken therein from the time the Perrine suit was filed in the Court of Chancery on October 18, 1932, to the hearing before the Vice-Chancellor on March 16, 1945, for an approval of the settlement agreement, have been outlined in two former opinions handed down by this court. (See 29 *Del. Ch.,* 531, 47 *A. 2d* 479, and *ante p.* 495, 57 *A. 2d* 63.)

Mr. Brady and those associated with him took no part in the many activities which were engaged in during the period above referred to; which included drafting and filing the original bill, the work necessary to be done in order to prepare the case for a hearing, the bills filed on behalf of Ione M. Overfield and Grace Stein Wiegle in the United States District Court for the Eastern District of Pennsylvania, the trial of the Overfield-Wiegle case before Judge Welsh which lasted for eighty days and resulted in a judgment for The Pennroad Corporation for $22,104,515, the appeal to the United States Circuit Court by which said judgment was reversed, the application to the United States Circuit Court for a rehearing and finally the settlement agreement for $15,000,000.

When The Pennroad Corporation filed its petition asking the Chancellor to approve the settlement agreement, he

ordered that a hearing be conducted by the Vice-Chancellor in Wilmington and that notice thereof be sent to all stockholders in order that they might appear and be heard. This notice stated that stockholders who made no objection or complaint at said hearing would be barred from doing so at any time thereafter.

In pursuance of this notice, Mr. Brady and his associates appeared before the Vice-Chancellor in April, 1945 representing certain stockholders, also Mr. Keenan who then represented the original complainant, Perrine, all of whom strenuously opposed the settlement agreement.

It is unquestionably true that the appellants and those whom they represented were properly before the court, but appellants are not justified in saying that they were invited or compelled to appear and be heard on the question of the advisability of the settlement agreement. The Chancellor ordered that notice be given to all the stockholders of The Pennroad Corporation in order that they might avail themselves of the opportunity of objecting to the settlement agreement if they desired to do so, but they were not required to be present or take any action one way or the other. Any stockholder who was not given appropriate notice of said hearing might well have objected that he was not given an opportunity to be heard.

In other words, the Chancellor followed the usual practice which is adhered to in that court where an attempt is made to settle a stockholder's derivative suit, and ordered a hearing on the petition asking for approval of the settlement agreement after notice to all stockholders of The Pennroad Corporation.

Prior to that time neither Mr. Brady and his associates, nor Mr. Keenan, had been known in the litigation. They appeared at the hearing before the Vice-Chancellor and during the entire hearing, which lasted for three weeks, opposed the approval of the settlement agreement. Their familiarity with every step of the litigation showed that

they had devoted much time to it and they should be well paid by those by whom they were employed. At the time they appeared on the scene of the action, the corporation had agreed to accept the sum of $15,000,000 in settlement of the matter in dispute.

When this settlement was agreed upon the appellants had done nothing or taken no part in the proceedings which led up to it. During the entire period, from the institution of the litigation to the time the settlement agreement was entered into, other counsel representing other stockholders had performed all of the work which was necessary to be done and which resulted in the creation of the fund from which the respondents seek to be recompensed. If the respondents had been successful in their efforts to convince the Chancellor that the settlement agreement should not have been approved, the litigation might still be pending and no one could say what the final result might have been. In addition to their efforts before the Chancellor in opposition to the settlement agreement, Mr. Brady filed a complaint in the United States District Court for the District of Delaware, seeking to enjoin the proceedings in the Court of Chancery in this state and asking that a receiver be appointed for The Pennroad Corporation. These activities on the part of the appellants resulted in delaying the actual consummation of the settlement agreement from April, 1945, to February, 1947.

It may be conceded that Mr. Brady and his associates, and Mr. Keenan, acted in good faith in their efforts before the Vice-Chancellor. It cannot be denied that they brought to his attention all of the transactions entered into by The Pennroad Corporation which culminated in the Pennsylvania Railroad-Pennroad litigation. In addition they pointed to the evidence brought out at the trial before the United States District Court in Philadelphia to prove the loss sustained by The Pennroad Corporation by reason of said transactions. They also called attention to the fact that the judgment obtained in the United States District Court

was for $22,104,515, and that Judge Biggs, in his dissenting opinion in United States Circuit Court of Appeals, said it should have been for a much larger amount.

But we cannot see how this benefited The Pennroad Corporation or its shareholders. As heretofore stated the fund had already been created when they were engaged to represent certain stockholders at the hearing. All of the information which they brought to the attention of the Vice-Chancellor was either already before him or available to him at his command. He had available the record of the whole proceeding, including the original complaints filed in each case, the answers thereto, the hearing in the United States District Court in Philadelphia, the briefs filed by counsel, the appeal to the United States Circuit Court of Appeals by which the judgment of the United States District Court was reversed, the briefs filed by counsel in that court, the application for a reargument before the United States Circuit Court of Appeals, the opinions of the various courts and the settlement agreement which was entered into. In order to properly familiarize himself with the question which he was called upon to determine, it was necessary for the Vice-Chancellor to thoroughly examine the questions raised, and we are confident he would have done so if Mr. Brady and his associates, and Mr. Keenan had never been engaged in the case.

The principle seems to be generally recognized that in stockholders derivative actions, attorneys engaged in the litigation are entitled to be paid from the fund resulting therefrom, to the extent that their services were helpful in the creation of said fund, or in the preservation of an existing fund. This principle was approved in the case of *R. H. McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co.*, 21 *Del. Ch.* 308, 190 *A.* 569. See also, *In re Chicago, M., St. P. & R. Co.*, (7 *Cir.*) 138 *F.* 2d 433; *In re New York Investors*, (2 *Cir.*) 79 *F.* 2d 182; *Kennedy v. Emerald Coal & Coke Co.*, 27 *Del. Ch.* 55, 30 *A.* 2d 269.

The appellants argue that the case of *Penington v. Commonwealth Hotel Construction Corporation*, 18 *Del. Ch.* 238, 158 *A.* 140, supports their position but we are unable to agree with that contention. Commonwealth Hotel Construction Corporation was an insolvent corporation for which a receiver had been appointed. The receiver filed a petition asking the Chancellor to determine how the cash assets in his hands should be distributed among the various classes of stockholders. All of the creditors of the corporation were paid in full and the remaining claimants to the fund were stockholders. These stockholders consisted of both preferred and common stockholders; those who had paid in full for their stock, those who had not paid in full for their stock and those who had paid a premium above par for their stock. Their rights depended upon a construction of the charter provisions which dealt with the classes of stock authorized to be issued and the position of each class if there was a liquidation and distribution of assets. It did not appear that any of said stockholders assisted in the creation of the fund in the hands of the receiver. In denying an allowance to one of the claimants for compensation the Chancellor said (18 *Del. Ch.* 238, 241):

"Their activities are referable to their individual employment. They cannot be regarded as representing the class in which their clients are included, when the class as a whole is already represented."

The appellants also rely upon the cases of *In re Warrington's Will*, 2 *Boyce* 595, 81 *A.* 501; *Rodney v. Burton*, 4 *Boyce* 171, 86 *A.* 826; and *In re Salmons' Will*, 7 *Boyce* 446, 108 *A.* 93, all of which are contested will cases in which the question of counsel fees for the contestants' counsel was raised. In all of these cases the fund to be distributed was derived from the estate of the decedent. Nothing was done by any of the contestants to help create it, increase or change it in any way. The purpose of the contest in each case was to prove that the will in question was not the will of the decedent, and thus establish the right of the contestant to his estate. In the case of *In re Warrington's Will, supra,* the court made the following comment:

"Commenting only upon that exception which relates to the dis-allowance by the register of counsel fees for this petitioner's counsel, the court has to say that it knows no rule whereby counsel fees for petitioner's counsel in contested will cases are of right or of course taxable as a part of the costs to be paid by the estate. Indeed, the in-clination of the court is to the contrary, as it feels that the allowance of counsel fees as costs constitutes an exception rather than a rule."

There is a clear distinction between this class of cases and cases in which the rights of derivative stockholders are involved. As heretofore stated, in the will cases the money is already in hand, while in stockholders derivative actions the purpose of the proceeding usually is to obtain money for the corporation or to protect certain funds which it already has. When the appellants became interested in this case they recognized that the Pennsylvania Railroad Company had agreed to pay $15,000,000 in settlement of the litigation, but they contended that amount was not enough. Throughout their argument they attempted to con-vince the Vice-Chancellor that the settlement agreement should not be approved because it should be for a much larger amount. This they failed to do, consequently, their efforts were of no benefit to the corporation or its stock-holders.

Attention was called to *Paragraph* 4907 of the *Code of* 1935, which contains the following provision,

"* * * A Court of Equity, * * * shall make such order concerning costs in every case as shall be agreeable to equity."

We have no difficulty with this provision of the law. When applied to a case like the one before us, it means that every one engaged in the litigation who was in any way helpful in the proceedings which culminated in the settlement agreement, or who assisted in securing the ap-proval of said agreement by the court in order that stock-holders might ultimately receive the benefit thereof, should be paid what their services are reasonably worth. This does not include the appellants, they took no part in the litigation until after the settlement agreement was signed,

and when they did become interested it was for the purpose of preventing the approval of said settlement agreement and all of their efforts were directed to that end.

The decree of the Chancellor is hereby affirmed.

Judge Speakman did not participate in the decision of this case.