**CITY OF MINNETONKA, petitioner, Appellant,**

v.

**Clarence Dwight CARLSON, et al., Respondents.**

**No. 50556.**

Supreme Court of Minnesota.

Oct. 31, 1980.

Deborah Hedlund, Minnetonka, for petitioner, appellant.

Olson, Gunn & Seran, Minneapolis, for respondents.

SCOTT, Justice.

The petitioner, City of Minnetonka, appeals from the order of a three–judge panel of the Hennepin County District Court filed on August 3, 1979, granting attorneys fees in the amount of $30,000 in favor of the respondents. We affirm.

The facts underlying this controversy were fully described in an opinion issued in this case on a prior occasion, entitled *City of Minnetonka v. Carlson*, 265 N.W.2d 205 (Minn.1978) [*Carlson I*]. The eight respondents owned three parcels of land which the City of Minnetonka wished to obtain for park and recreational purposes. The city obtained two separate appraisals of the three parcels. One appraisal valued them at $264,000, the other appraisal at $240,000. On the basis of these appraisals, the city commenced condemnation proceedings in district court. The respondents retained attorney John D. Flanery to represent them under a contingent fee agreement providing that the attorney would receive one–third of the amount by which the condemnation awards exceeded $150,000.

The city's petition to condemn was granted and three commissioners were appointed pursuant to Minn.Stat. § 117.075 (1976) to determine an award. Because the commissioners returned awards totaling $404,475 greater than the highest of the two private appraisals, the city decided to abandon the condemnation.

At this point, Attorney Flanery associated with a law firm to assist him in contesting the legality of the city's abandonment. The Hennepin County District Court subsequently held that the city could properly abandon the condemnation, and no appeal was taken from that determination.

Thereafter, the respondents moved the district court for an order directing the city

to pay their reasonable costs and expenses, including attorney fees, relying upon Minn. Stat. § 117.195 (1976).[1] The district court ordered the city to pay the respondents $1,500 for appraisal expenses, but denied any recovery of attorneys fees. An appeal was then taken to this court. In *Carlson I*, the court concluded that the respondents were entitled to attorneys fees for services prior to the time of abandonment. In authorizing the award of attorneys fees, the *Carlson I* court stated:

> [W]hat constitutes the reasonable value of the legal services is a question of fact to be determined by the evidence submitted, the facts disclosed by the record of the proceedings, and the court's own knowledge of the case. * * * Absent any statutory limitations, allowances should be made with due regard for all relevant circumstances, including the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation and ability of counsel; *and the fee arrangement existing between counsel and the client.*

265 N.W.2d at 206 (quoting with approval from *State ex rel. Head v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971) (emphasis added in *Carlson I*). The court thus defined the parameters of its remand of the matter to the district court.

Pursuant to the remand interrogatories were served by the city upon Attorney Flanery on August 14, 1978. Attorney Flanery never answered the interrogatories in writing; instead, he responded orally to the city attorney's questions on August 28, 1978, at a special–term hearing of the Hennepin County District Court. Attorney Flanery additionally presented the testimony of other witnesses relating to his claim for attorneys fees.

On August 29, 1978, the city moved the court alternatively to allow it to depose any further witnesses or to strike the testimony of those already heard by the court. By its order dated August 29, 1978, the court directed that all witness testimony be stricken and authorized further discovery. Thereafter, on December 8, 1978, the district court heard arguments of counsel relating to the nature of the proceeding and subsequently directed that the matter be considered at special term. By order dated February 12, 1979, the district court directed an award of attorneys fees in the amount of $9,000. The respondents then moved the court for reconsideration. By order dated February 27, 1979, the court on its own motion vacated the order of February 12, 1979, and referred the matter to a three–judge panel for consideration.

In an order dated July 24, 1979, the majority of the panel found that an award of $30,000 was in all respects a reasonable fee upon the city's abandonment of the condemnation proceedings.[2] This appeal by the city followed.

In reaching its decision the three–judge panel reviewed several affidavits containing expert opinions relating to the value of Attorney Flanery's services from the time he was retained until the abandonment occurred. Four attorneys who are primarily engaged in condemnation practice representing both condemnees and condemnors opined that the services could be valued at $35,000 (Paul Skjervold); $40,000 (Josiah Brill); $80,000 (Russell Sorenson); and $90,-

---

1. Section 117.195 provides in relevant part that "[w]hen the proceeding [for condemnation] is so dismissed or the same is discontinued by the petitioner, the owner may recover from the petitioner reasonable costs and expenses including attorneys fees."

2. One judge dissented, stating that if time alone were a factor the attorney would be entitled to fees in the amount of $6,000 to $7,500; that the majority opinion and award were almost the equivalent of the anticipated award had the desired result in condemnation been obtained; and that the majority placed too great an emphasis upon the contingent fee arrangement. He concluded that he would not have awarded fees in excess of from $12,000 to $15,000 and that any additional award is "a penalty imposed upon Minnetonka for its exercise of a statutory right, *i. e.*, the discontinuance of eminent domain when it becomes too costly for its taxpayers."

000 (Thomas Ulmen). Additionally, each of the three court–appointed commissioners offered affidavits praising Attorney Flanery's competence and diligence in connection with the proceedings.

Attorney Flanery's own affidavit enumerated the many consultations with his clients, detailed the many meetings with officials in connection with the proceeding and discussed his legal research and attendance at numerous judicial proceedings. Although he stated that he did not maintain time records because he had entered into a contingent . fee agreement, he estimated that he devoted a minimum of 150 to 200 hours to the preparation of the case. He concluded that had the proceedings not been dismissed, he would have received fees in excess of $100,000.

In opposition, the city contended that the unavailability of records rendered estimation difficult. It suggested that a reasonable number of hours expended by Attorney Flanery would be approximately 81, at a rate of compensation of $35 per hour. Consequently, the city suggested that a fee of $2,835 represented the actual time expended.

The issue presented to this court is whether the district court's findings of the reasonable value of legal services are clearly erroneous, requiring reversal.

■ This court, in the *Paulson* case, adopted the scope of review contained in Minn.R.Civ.P. 52.01, that "findings of fact shall not be set aside unless clearly erroneous." It further expanded upon that standard by stating that the rule enunciates the broadest scope of review exercised by an appellate court. Consequently, "[w]e will reverse a trial court's findings only if, on a review of the entire record, we are left with a firm and definite conviction that a mistake has been made." *Roy Matson Truck Lines, Inc. v. Michelin Tire Corp.*, 277 N.W.2d 361, 361–62 (Minn.1979); *see Vernon J. Rockler & Co., Inc. v. Glickman,*

*Isenberg, Lurie & Co.*, 273 N.W.2d 647, 650 (Minn.1978); *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976), *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976), *noted in* 5 Wm. Mitchell L.Rev. 541 (1979); *In re Estate of Balafas*, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972).

■ The *Paulson* and *Carlson I* cases require this court to examine the award of attorneys fees to satisfy itself that the district court properly did not regard the contingent fee arrangement as the most controlling factor. Our decisions in those cases also require that each of the relevant factors set forth therein be considered in determining the value of the legal services. As indicated below, in applying the six factors enumerated in *Paulson* and *Carlson I*, the district court could conclude that $30,000 was a reasonable award as attorneys fees for the period from the time Attorney Flanery was retained until the city abandoned the condemnation proceeding.

### 1. *Time and Labor Required*

■ Attorney Flanery's· affidavit illustrates the great amount of time and energy he was required to expend in working on this condemnation case. Because this was a contingent fee case, he did not keep time records.[3] He estimated, however, that he spent a minimum of 150 to 200 hours performing the specific tasks listed in his affidavit. As indicated by the affidavits of court–appointed commissioners Hynes and Rerat, the amount of time and labor required in this case was intensified because three separate and distinct parcels of land were involved.

### 2. *Nature and Difficulty of Responsibility Assumed*

The affidavits of two of the eminent domain specialists indicate that this condem-

---

**3.** In the future, we strongly recommend that any attorney seeking attorneys fees pursuant to case law or statute maintain adequate written time records in all instances. The absence of written time records may require this court to reverse any award of attorneys fees absent compelling circumstances.

nation case was especially difficult because it involved the complex issues of the highest and best use of the land in light of the reasonable probability of zoning changes.

### 3. The Amount Involved and the Result Obtained

The result that Attorney Flanery obtained for his clients was excellent. The city's highest appraisal for the three parcels was $264,000. The total of the commissioners' awards was $668,475. Because of Attorney Flanery's efforts his clients' land was not taken for a mere 40 percent of its value. The affidavits of all of the eminent domain specialists emphasize the excellence of the result obtained.

### 4. Fee Customarily Charged and Fee Arrangement

The fourth and sixth factors listed in *Paulson* and *Carlson I* for consideration in determining attorneys fees may be considered together. The affidavits of the eminent domain specialists indicate that the contingent fee arrangement between the landowner and his lawyer is the normal arrangement in condemnation cases. The abandonment should not significantly affect the payment of the fee, because the value of the lawyer's work to the landowner was not diminished. Although an award was never paid, the landowner was protected from having his land taken at a fraction of its fair market value.

### 5. The Experience, Reputation and Ability of Counsel

Although the record does not indicate that Attorney Flanery is a well-known specialist in the field of eminent domain law, it does indicate that he has had some experience working in this area. More importantly, the results obtained in this case were sufficient to permit the district court to determine that Attorney Flanery's ability in this case deserves the compensation awarded.[4]

■ We find no error in the district court's findings. The district court, when sitting without a jury, is the sole judge of the credibility of witnesses and may accept all or only part of any witness' testimony. *See, e. g., State v. Pogonski,* 257 N.W.2d 578 (Minn.1977); *Seidl v. Trollhaugen,* 305 Minn. 506, 232 N.W.2d 236 (1975). That court's detailed memorandum of law indicates that it did not place too great an emphasis upon the contingent fee arrangement or any of the other *Paulson–Carlson I* factors.[5] Because, after a review of the entire record, we are not left with a firm and definite conviction that a mistake has been made, this court will not substitute its judgment for that of the district court.

Affirmed.

SHERAN, Chief Justice (dissenting).

In my opinion, the maximum amount which should be allowed as attorneys fees in this case is $15,000.

AMDAHL and SIMONETT, JJ., not having been members of this court at the time of argument and submission, took no part in the consideration or decision of this case.

---

4. In addition to the six factors set forth in *Paulson* and *Carlson I*, Disciplinary Rule 2–106 of the Minnesota Code of Professional Responsibility is instructive. That rule includes three factors for the determination of a reasonable attorneys fee that were not specifically listed in either *Paulson* or *Carlson I*. The first factor is whether the handling of the case precludes other employment for the lawyer. Attorney Flanery indicated that he had to forego other employment that would have resulted in immediate income to him so that he could handle this case. Because immediate income was given up for the risk of successfully prosecuting this case, the district court's order is rendered all the more convincing. The second factor mentioned in the disciplinary rule is the time limitations imposed by the client. Apparently no time limitations were relevant to this case. Finally, the disciplinary rule indicates that the nature and length of the professional relationship between the client and the lawyer be reviewed. The respondents were not regular clients of Attorney Flanery. Consequently, they would not expect lower legal fees because they regularly engaged him to perform legal services. This final factor also militates in favor of the district court's decision.

5. The trial court specifically indicated that its award "is well supported by the evidence before the Court *and is made on the basis of the six [Paulson–Carlson I] factors previously enumerated.*" (Emphasis added.)