**STATE of Minnesota, Respondent,**

v.

**Kenneth L. PETERSON, Appellant.**

**No. C8–85–685.**

Court of Appeals of Minnesota.

Dec. 17, 1985.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

David J. Ewens, Arthur J. Seifert, Seifert & Weinard, Grand Rapids, for appellant.

Heard, considered, and decided by POPOVICH, C.J., and WOZNIAK, and CRIPPEN, JJ.

**OPINION**

POPOVICH, Chief Judge.

This is an appeal from a judgment of conviction for felony theft under Minn.Stat. § 609.52, subd. 2(1) and subd. 3(2) (1984) pursuant to Minn.Stat. § 609.05 (1984). Defendant waived his right to a trial by jury and the matter was tried by the court. We affirm.

**FACTS**

When reviewing appellant's claim the evidence was insufficient to convict him, we must view the facts in the light most favorable to the prosecution. Given this, the facts are as follows:

Tony Olinger is an 84-year-old retired farmer who cares for his adult nephew, Joe Olinger, who is blind and mentally retarded. Appellant Kenneth Peterson, a social worker, was assigned Joe Olinger as a client. As a result of his contact with Joe Olinger, Peterson had several conversations and three in-person meetings with Tony Olinger over a six month period.

On June 7, 1984, Peterson telephoned Tony Olinger and asked if he could bring his wife Sheila along on his visit to the farm to look at the old objects stored there. Olinger agreed. When Peterson and his wife arrived, Olinger took them to the attic above the garage. Sheila Peterson examined objects stored in boxes there. She put some of the items into boxes the couple had brought with them. She expressed interest in three butter churns. Olinger told her that one of the churns would sell for $35, but he "wouldn't take even $50." Olinger did not see either of the Petersons take a butter churn at this time.

Kenneth Peterson carried two boxes down the ladder from the attic. He then asked Olinger if he had things stored in the barn. Olinger replied he did, and all three walked there. The Petersons took the two boxes with them. Olinger saw the Petersons choose items they wanted, including an iron wheel and a flatiron, and place them in the boxes. Olinger never saw all of the objects the couple took in the boxes and the Petersons never told Olinger what they had taken.

They left the barn and went to a quonset shed. Olinger saw Sheila Peterson select a hog ringer and pliers and then he left the Petersons alone when he went outside to get some fresh air.

After the Petersons left the quonset shed, Kenneth Peterson carried the two boxes to the car and put them either in the trunk or the back seat. All three walked to the house. The Petersons went upstairs and looked around while Olinger waited downstairs. They did not take anything from the house, although they inquired about a light in which they were interested.

Before leaving the farm, appellant said to Olinger, "Tony, I'm a friend of yours. What are you going to ask me for this stuff?" Olinger replied, "I don't know what you got in the boxes * * * I got to see what you put in the boxes." Appellant answered, "You saw what we put in the boxes * * * How's $10 going to be." Appellant then handed Olinger a $10 bill. Olinger looked at appellant and laughed. Ap-

pellant responded by repeating, "I'm a friend of yours, Tony. I'm a friend of yours." Olinger did not accept the money, nor did he reject it, and did not shake hands with either Peterson when they left.

The next day Olinger became suspicious and found the butter churn with a green jar and six gold-inlaid tumblers were missing. The sheriff investigated after a public health nurse who had visited Olinger advised the sheriff of what Olinger told her of the incident. Two separate searches recovered several items that Olinger never saw the Petersons take including the butter churn, a glass or crystal basket, and the six tumblers. The trial court found Kenneth Peterson guilty of theft and of liability for crimes of another.

## ISSUES

1. Was the evidence sufficient to support appellant's conviction for theft?

2. Was the evidence of value sufficient to support appellant's felony conviction?

## ANALYSIS

1. In reviewing a claim of sufficiency of the evidence we must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Merrill*, 274 N.W.2d 99 (Minn.1978). The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Wahlberg*, 296 N.W.2d 408 (Minn.1980).

*State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). This standard of review is applicable to court trials. *City of Minnetonka v. Carlson*, 298 N.W.2d 763, 766 (Minn.1980); *State v. Thurmer*, 348 N.W.2d 776, 778 (Minn.Ct.App.1984).

Appellant was charged with theft under Minn.Stat. § 609.52, subd. 2(1), which re-

quires lack of consent of the property owner to the taking of property. At issue is whether Olinger consented to the taking.

Appellant claims the items were legitimately sold to him and Sheila Peterson for $10, and Olinger thereby consented to the taking. Appellant also claims because Olinger did not object to Kenneth Peterson placing the boxes of items in the car or object to the Petersons leaving with the items, he consented. Olinger never voiced an objection to the actual taking.

■ The evidence shows that Kenneth Peterson intimidated Olinger into "allowing" him to take the items and no sale ever took place. The trial court explained this intimidation in its findings of fact:

> Peterson repeatedly stressed that he was a good friend of Olinger's and that he should not have to pay very much for the items taken. Olinger had never seen or been told what had been placed in the box in the attic which was now * * * in Peterson's trunk, and really had no idea what items had been taken by the Petersons. He refused to set any price and Peterson, who had only $13.00 in cash with him, stated that since he was a friend of Olinger's and didn't expect to pay very much, if anything, offered a $10.00 bill which Olinger neither accepted nor rejected.

Kenneth Peterson's "supervisory" position with respect to Olinger's nephew also supports the trial court's conclusion that Olinger was intimidated.

2. Appellant argues that because he was not charged with theft by swindle under section 609.52, subd. 2(4) (1984), and because that charge corresponds more closely with the facts of this case, he cannot be convicted of stealing. Although theft by swindle may have been a more appropriate charge, theft by taking, transferring, concealing, or retaining possession under subd. 2(1) also applies. The charges are not mutually exclusive.

3. The trial court concluded that the value of the property taken without consent "was substantially in excess of $250.00." The value of the goods must be more than $250 for felony theft. *See* Minn. Stat. § 609.52, subd. 3(2) (1984).

Appellant claims the trial court erred in accepting expert testimony of the retail value of the goods, rather than the evidence of their wholesale value. The trial court did not err because Minn.Stat. § 609.-52, subd. 1(3) defines the value of stolen property as "the retail market value at the time of the theft" unless the retail value cannot be ascertained.

Appellant argues in calculating value the trial court failed to distinguish between those items the Petersons took with consent and those that were stolen. The trial court found Olinger "neither knew of nor consented to the taking of most of the items and all of the valuable items." The trial court also found that the "combined retail market *value of the property* of Olinger *taken* by defendant and his wife on June 7, 1984, *without the consent* of Olinger, was substantially in excess of $250.00." (Emphasis added.) Therefore, the trial court was aware that a few items were taken with consent and took this into account when valuing the property.

■ The record of what was and was not taken with consent is not a model of clarity. However, Olinger testified specifically the butter churn and tumblers were taken without his permission. One of the State's experts appraised the tumblers as worth $210, and the butter churn as worth $50. The other expert called by the State gave lower values. The trial court stated the expert giving the higher figures had more credibility. Assuming that only the butter churn and tumblers were taken without permission, the higher values exceed $250. We will not disturb the fact-finder's evaluation of credibility.

## DECISION

The evidence was sufficient to support appellant's conviction for theft.

Affirmed.