**ROBERT L. WHEELER, INC. d/b/a
Robert Leyton Wheeler,
Inc., Appellee,**

v.

**Robert L. SCOTT, Appellant.**

**Nos. 67365, 67156.**

Supreme Court of Oklahoma.

July 11, 1989.

Robert L. Wheeler, Oklahoma City, for appellee.

Dale E. Cottingham, Donald K. Blackwell, Moricoli, Wilson, Harris & Dubberstein, Oklahoma City, for appellant.

KAUGER, Justice.

The dispositive question is whether, after summary judgment was entered against Robert L. Scott (appellant/client) in a mortgage foreclosure proceeding, and after the trial court subsequently reduced the fee charged by Scott's attorney from $140,-116.87 to $125,723.00, the fee was still excessive. After a careful examination of the standards enunciated in *State ex rel. Burk v. Oklahoma City*, 598 P.2d 659, 661 (Okla. 1979) and *Oliver's Sports Center v. Nat'l Standard Ins.*, 615 P.2d 291, 294–95 (Okla. 1982), we find that it was.

### FACTS

On October 26, 1984, Robert L. Scott (client/appellant), a geologist and a geophysicist, hired Robert L. Wheeler (appellee/lawyer) to represent him after he was unable to pay a business loan. During the next ten months, Wheeler represented Scott in the collection and lien foreclosure action filed against Scott by the mortgagee, United Oklahoma Bank. In the first five months of Wheeler's representation, Scott was billed for legal services in the

amount of $54,275.37 representing 524.5 hours and averaging 108.5 hours per month which he paid. During the next five months, Scott was billed $85,841.50 for legal services representing 753.4 hours, averaging 150.6 hours per month which he did not pay.

On April 23, 1985, the bank moved for summary judgment. Two days before the hearing on the bank's motion, the lawyer told his client that if the attorney fees were not paid, he would withdraw from the case. Scott did not pay, and Wheeler did not withdraw. Instead, a first year associate was sent to oppose the bank's motion for summary judgment. The bank's motion was granted, and the attorney withdrew from the case on June 21, 1985. Thereafter, Scott retained new counsel, and the case was settled.

On June 28, 1985, Wheeler filed an action to collect unpaid attorney fees. Scott answered, asserting that the fees were excessive for the following reasons:

1) The case was never tried. Summary judgment was entered against him.

2) The client was billed a total of 1295.9 hours. However, a first year associate, who had failed to pass the bar at the first sitting, and who had been admitted to the bar for only five months before beginning work on the case, billed 853.5 hours at $110.00 an hour.

3) The firm representing the bank charged the bank $75,534.10 for 850 hours. These hours were for three attorneys with an average of ten to twenty years of experience, who normally bill at $150.00 an hour. However, because the lawyers are on retainer with the bank, they reduced their normal hourly rate in this case.

4) The bank's motion for summary judgment alleged that although a large amount of money and property was involved, the foreclosure was a simple case complicated by unfounded and legally unsound assertions by Scott's counsel. The bank's lawyer repeated these assertions at the hearing on attorney fees, and he also testified that his first year associates were billed at $85.00 an hour.

5) As prevailing party, the opposing attorney received $75,534.10 in attorney fees.

After hearing the evidence, the trial court reduced the hourly rate of the first year associate from $110.00 to $80.00, and the total attorney's fee from $140,116.87 to $125,723.00. Scott appealed. The Court of Appeals affirmed finding that the trial court had followed the guidelines set forth by *Burk* and *Oliver's Sports Center*, and that there was competent evidence to support its judgment. We granted certiorari on March 22, 1989, to address the question of the reasonableness of the attorney fee.

UNDER THE BURK GUIDELINES,
THE ATTORNEYS FEE IS
EXCESSIVE.

The *Burk* and *Oliver's* Courts adopted criteria to guide trial court's in setting reasonable attorney's fees. A proper resolution of this case requires a thorough examination and balancing of the following standards:

"1. Time and labor required.

2. The novelty and difficulty of the questions.

3. The skill requisite to perform the legal service properly.

4. The preclusion of other employment by the attorney due to acceptance of the case.

5. The customary fee.

6. Whether the fee is fixed or contingent.

7. Time limitations imposed by the client or the circumstances.

8. The amount involved and the results obtained.

9. The experience, reputation and ability of the attorneys.

10. The 'undesirability' of the case. (i.e. risk of non-recovery)

11. The nature and length of the professional relationship with the client.

12. Awards in similar cases."

### 1. Time and labor required.

The most visible and the most readily explainable portion of a bill for attorney fees is the time and labor expended by an attorney in performing services for a client. However, it is not the only relevant factor, and it must be considered in conjunction with the other enumerated criteria. Fees cannot be awarded on the basis of time alone—the use of time as the sole standard is of dubious value. Were fees to be calculated based only on the time spent on a case, worthy use of time would cease to be a virtue, a premium would be placed on inexperience, inefficiency, and inability, and expeditious disposition of litigation would go unrewarded.[1]

Time spent in acquiring a basic law school education in the area of law concerned cannot be regarded as one of the determinative factors of a reasonable attorney fee. Attorneys are presumed to have acquired a working knowledge of fundamental legal principles as well as the ability to examine and apply the law. This does not mean that an attorney, within the limitations ordinarily necessary for a competent and skillful lawyer, should not be compensated for the time spent in necessary research.[2] It does mean that if a lawyer takes on a case in an area in which he or she is totally unfamiliar or inexperienced, the client should not have to pay for every minute of the lawyer's preparation. Here, for example, a comparison of the time charged for preparation of the case by each of the law firms reflects that it is unlikely that billing 1295.9 billable hours, 853.5 of which were by a first year lawyer was proper when the prevailing law firm staffed by seasoned counsel charged for 850 hours. In short, a reasonable attorney's fee in a given case does not necessarily result from simple multiplication of the hours spent times a fixed hourly rate.[3]

### 2. Novelty or difficulty of issues.

The attorney for the prevailing party testified at the hearing, and he stated in his motion for summary judgment, that this was a simple case. He also noted that although a large sum of money was involved, the case had been unduly complicated by opposing counsel's unfounded and legally unsound assertions. One of the basic considerations in establishing the reasonable value of legal services is the type, extent, and difficulty of the services rendered.[4] Substance must control over form. The intricacy and difficulty of the questions involved, and not necessarily the amount of manual legal work exhibited by the number of papers in the file of the case must control.[5]

### 3. The skill requisite to perform.

Another factor, which must be considered with the novelty or difficulty of the issues, is whether the services are routine, or whether exceptional skill or effort is required.[6] Wheeler testified that he relied on his oil and gas expertise in designing his strategy. However, this expertise apparently did not come into play before summa-

1. *Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.,* 737 P.2d 1186, 1189 (Okla.1987); *Oliver's Sports Center, Inc. v. Nat'l Standard Ins. Co.,* 615 P.2d 291, 294 (Okla.1980). See also, Hornstein, "Legal Therapeutics: The 'Salvage' Factor in Counsel Fee Awards," 69 Harv.L.Rev. 658 (1956).

2. *Estate of Fraiman,* 408 Pa. 442, 184 A.2d 494, 496 (1962); *In re McInnis' Will,* 91 N.Y.S.2d 806, 810 (Sur.Ct.1949). See also, Annot., "Amount of Attorneys' Compensation in Absence of Contract or Statute Fixing Amount," 57 A.L.R.3d 475 (1974).

3. *Southwestern Bell Tel. Co. v. Parker Control, Inc.,* see note 1, supra.

4. *Parkhill Truck Co. v. Reynolds,* 359 P.2d 1064, 1068 (Okla.1961); *Driver v. Tolstornog,* 358 P.2d 1108, 1111 (Okla.1960).

5. *Shatzkin v. Employee's Ass'n,* 33 N.Y.S.2d 6, 8 (Mun.Ct., 1941), aff'd, 33 N.Y.S.2d 8 (App.Term 1941). See also, 1 S. Speiser, "Attorneys' Fees", p. 298, 303, § 8.4 (1973).

6. *Dessel v. Goldman,* 231 Md. 428, 190 A.2d 633, 635 (1963); *In re Condemnation of Certain Land,* 254 Iowa 769, 119 N.W.2d 187–88 (1963).

ry judgment was entered because the attorney did not determine the value of the oil producing properties until after it was rendered. (The declining value of the properties was the reason given by the bank for settling the cause for less than the amount entered in its favor on summary judgment.)

### 4. Loss of opportunity for other employment.

The fact that the employment for which compensation is sought deprived the attorney of the opportunity to secure other employment is another element of some significance in determining a reasonable fee.[7] The court must consider not only the loss of other employment because of the time taken by the matter at hand, but also the fact that there may be involved in the matter certain elements which might cause the attorney to lose future business because of an association with the case.[8] The attorney testified that this case neither required that he refuse to represent a potential client, nor did he introduce any evidence that his association with this case deprived him of future business.

### 5. The customary fee.

Generally, courts consider the amounts customarily charged or allowed for similar services in the same locality.[9] Only two witnesses were presented, and their testimony was conflicting. The expert called by Scott testified that the amount the prevailing party received, $75,500.00, was reasonable compensation. The expert witness, who testified on behalf of Wheeler, stated that $140,000.00 was a reasonable fee.

### 6. Whether the fee is fixed or contingent.

Although the court initially looks to the hourly rate for comparable representation where compensation is guaranteed, it must adjust the basic hourly rate where compensation is contingent by assessing the likelihood of success at the outset of the representation.[10] Although contingent fee contracts are subject to restrictions, especially if the client is a minor, such agreements have generally been enforced unless the contract is unreasonable. The contingent fee system allows persons who could not otherwise afford to assert their claims to have their day in Court.[11] In this case, a contingent fee is not involved. The parties agreed that the fee would be based on a hourly rate.

### 7. Time limitations imposed by the client or circumstances.

This element is pertinent if an attorney must adjust the firm's other work load to accomodate the particular pressing needs of a client. Generally, additional fees have been allowed when the client failed timely to notify the attorney of such problems.[12] There was no evidence implying any unusual time restrictions.

### 8. The amount involved and the results obtained.

In establishing reasonable attorney fees, the court may properly consider the amount involved in litigation.[13] This case involved over ten million dollars. However, this cannot be the sole component to be weighed. If the amount implicated, even though large in denomination, neither increases measurably the work nor enlarges the principles of law, it cannot be the

7. *Mellon v. Fulton,* 22 Okl. 636, 98 P. 911, 913 (1908).

8. *Perrine v. Pennroad Corp.,* 29 Del.Ch. 423, 51 A.2d 327, 343 (1947), aff'd, 30 Del.Ch. 517, 64 A.2d 412 (1948). See also, 1 S. Speiser, "Attorneys' Fees", p. 310–11, § 8.7 (1973).

9. *Forester v. Betts,* 179 N.C. 681, 103 S.E. 209 (1920). See also, Annot., "Amount of Attorneys' Compensation in Absence of Contract or Statute Fixing Amount," see note 2, supra.

10. *Oliver's Sports Center, Inc. v. Nat'l Standard Ins. Co.,* see note 1, supra.

11. *Sneed v. Sneed,* 681 P.2d 754, 756 (Okla. 1984). See Annot., "Power of Guardian Ad Litem or Next Friend to Bind Infant by His Contract with Attorney Fixing Compensation", 7 A.L.R. 108 (1920).

12. *Mulhern v. Roach,* 398 Mass. 18, 494 N.E.2d 1327, 1335 (1986).

13. *Driver v. Tolstornog,* see note 4, supra; *First Nat'l Bank v. Stricklin,* 347 P.2d 652, 656 (Okla. 1959).

deciding factor in setting a very high fee.[14]

Closely related to the element of the amount or value of the property at issue, is the solution achieved by the attorney. While the court should consider all the guidelines, it must also contemplate the benefit to the client as a result of the services.[15] The attorney testified that his client needed what he provided—time for opportunity to accomplish settlement—either to extend the client's loan or to make arrangements to fit his cash flow and current financial condition. (We note that after the attorney withdrew, the client and the bank settled.)

### 9. Experience, reputation, and ability of the attorney.

The attorney's standing in the profession for learning, ability, skill, and integrity is recognized as a proper matter for consideration in assessing the value of the services provided and can be a basis for a higher award. The reverse is also true: inexperience, apparent lack of ability, or poor performance may reduce the award.[16] Here, it appears from the time sheets and the appearances in court, that the primary attorney was the first year associate. The testimony by the expert witnesses indicated that the first year associate had not established a reputation in the legal community sufficient to command a higher fee.

### 10. The undesirability of the case.

Apparently, this was an ordinary case to foreclose a lien which the client had little chance of winning, and that the client's best solution was the settlement obtained after the attorney withdrew from the case.

### 11. Casual or regular employment.

The nature and length of the professional relationship between the client and the attorney is also subject to review. Clients who do not routinely employ the attorney should not expect the lower legal fees normally negotiated with clients who regularly hire or retain counsel.[17] Scott was not a regular client.

### 12. Awards in similar cases.

There was no evidence presented concerning awards in similar cases, other than the amount received by the prevailing party.

## CONCLUSION

The proper determination of reasonable attorney fees requires a balancing and thorough consideration of the *Burk* and *Oliver's* factors which are applicable to each case.[18] Apparently, the trial court gave too much weight to the time spent on the case and failed to consider adequately the other applicable standards. Setting attorney fees would be a simple matter if numbers could be inserted mechanically into a universally valid formula. Unfortunately, this is not the case. Here, it is obvious that much of the time expended was unnecessary by any reasonable standard. Under our detailed analysis of the guidelines—particularly the excessive time spent, the relative simplicity of the issues (except where they were needlessly multiplied and complicated by counsel), the very average lawyering skill required, the nonpreclusion of other employment, the entry of summary judgment, the customary fee, the absence of restrictive time limitations, and the inexperience of the lawyer who did the bulk of the work—we find that the fee

**14.** *Young v. Young,* 354 Mich. 254, 92 N.W.2d 328, 330 (1958).

**15.** *Parkhill Truck Co. v. Reynolds,* see note 4, supra.

**16.** *Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.,* see note 1, supra; *Oliver's Sports Center, Inc. v. Nat'l Standard Ins. Co.,* see note 1, supra. See also, *State v. Gables–By–The–Sea, Inc.,* 374 So.2d 582, 584 (Fla.Dist.Ct.App.1979).

**17.** *Minnetonka v. Carlson,* 298 N.W.2d 763, 767 (Minn.1980); *Starin v. Mayor of New York,* 106 N.Y. 82, 12 N.E. 643, 647 (1887).

**18.** *Zuniga v. United Can Co.,* 812 F.2d 443, 453 (9th Cir.1987); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir.1975), cert. denied sub nom. *Perkins v. Screen Extras Guild, Inc.,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

allowed by the trial court is excessive. However, it is not the function of this Court to make an initial determination of questions of fact.[19] A reasonable attorney's fee should be determined on remand in accordance with an appropriate balancing of the *Burk* and *Oliver's* factors discussed herein.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED WITH DIRECTIONS.

OPALA, V.C.J., and LAVENDER, DOOLIN and ALMA WILSON, JJ., concur.

SIMMS, Justice, with whom HARGRAVE, Chief Justice joins, dissenting:

I would deny certiorari which would affirm the trial court's award.

HODGES, Justice, with whom SUMMERS, Justice joins, concurring in part, dissenting in part:

The amount of the attorney fee should be decided by this Court. I dissent to its remand to the trial court.

19. *Davis v. Gwaltney,* 291 P.2d 820, 824 (Okla. 1955).