2010 OK 39

**In the Matter of the ADOPTION OF BABY BOY A, a Minor Child.**

**No. 106,074.**

Supreme Court of Oklahoma.

May 4, 2010.

See also 224 P.3d 1285.

Christopher W. Venters and Collin Robert Walke, Assistant Oklahoma County Public Defenders, Oklahoma City, OK, for appellant.

M. Eileen Echols and Amy L. Howe, Echols and Associates, Oklahoma City, OK, for appellees.

TAYLOR, V.C.J.

¶ 1 In this appeal, the appellant is the Oklahoma County Public Defender in his capacity as the attorney for the minor child and the appellees are the adoptive parents. The dispositive question is whether the district court abused its discretion in approving the adoptive parents' expenditures for fees, costs, and expenses in connection with the adoption. We answer in the affirmative and remand this cause to the district court for further proceedings consistent with this opinion.

## I. The Proceedings

¶ 2 In this private adoption, the adoptive parents paid a total of $147,289.42 for fees, costs, and expenses. A review of the adoption proceedings is a necessary step in our consideration of the trial court's approval of these expenditures.

¶ 3 In September of 2005, the unwed prospective birth mother made arrangements with a private attorney for the adoption of her unborn child. By the end of September of 2005, the prospective adoptive parents began paying the prospective birth mother's living expenses pursuant to an order of the district court. The birth mother delivered Baby Boy A on April 11, 2006.

¶ 4 On April 17, 2006, the birth mother, her attorney, Paige Lee, Ponca City, Oklahoma, and one of the attorneys who arranged the private adoption for the prospective adoptive parents,[1] Tina Peot, appeared before the district court. The birth mother executed her permanent relinquishment of parental rights and her consent to the adoption of Baby Boy A and gave testimony regarding her relinquishment and consent. The birth mother also gave testimony regarding the putative father. She testified that the putative father knew she was pregnant and should have known of the birth of Baby Boy A, the putative father had not acknowledged paternity of Baby Boy A, he did not provide any medical or financial support for her during the pregnancy, he did not provide any medical or other financial support for Baby Boy A, she did not refuse any support from the putative father, and the putative father had not exercised any parental right. The district court questioned the birth mother and executed the certification/verification as required by the Oklahoma Adoption Code, 10 O.S.2001, §§ 7503–2.3 and 7503–2.4.

¶ 5 On April 25, 2006, the prospective adoptive parents filed a petition for adoption in the district court in Oklahoma County, together with an application to terminate the parental rights of the putative father, a voluntary placement statement, an interstate disclosure statement, and other routine filings. Upon the birth mother's consent, the prospective adoptive parents obtained physical custody of Baby Boy A but did not remove him from the state of Oklahoma until they obtained the requisite permission to return to their home state with Baby Boy A.[2]

---

1. For this adoption, the prospective adoptive parents engaged three different law firms. They engaged their first law firm, Julie A. Demastus and Tina Peot, in Oklahoma City, Oklahoma, to arrange the adoption. The first law firm initiated the adoption proceedings in the Oklahoma County District Court. They engaged their second law firm, Echols & Associates, in Oklahoma City, Oklahoma, when the biological father contested the adoption. They also engaged a third law firm in their home state. This opinion refers to the law firms in Oklahoma as the first law firm and the second law firm and the home state law firm as the home state law firm.

2. Under the Interstate Compact for Placement of Children, 10 O.S.2001, §§ 571–576, a compact

¶ 6 On May 5, 2006, the district court set the application to terminate parental rights of the putative father for a hearing. Upon notice of the hearing, the putative father submitted to a paternity test which determined that he is the biological father of Baby Boy A. On the scheduled hearing date, June 12, 2006, the biological father filed a response, alleging that in August of 2005 he became aware of the birth mother's claim that he was the father, he is the biological father of Baby Boy A, he is a member of the Cherokee Nation, and his consent to the adoption is necessary. The biological father expressly withheld his consent to the adoption, and the district court appointed the Oklahoma County Public Defender to serve as attorney for Baby Boy A.

¶ 7 On June 14, 2006, the Cherokee Nation and the Bureau of Indian Affairs were served notice of the adoption proceeding. On June 26, 2006, to assure compliance with the Federal Indian Child Welfare Act, 25 U.S.C. §§ 1901 *et seq.*, the birth mother with her attorney and the first law firm for the prospective adoptive parents appeared before the district court, and the birth mother reaffirmed her April 17, 2006 testimony and again relinquished her parental rights and consented to the adoption of Baby Boy A. On June 28, 2006, the Cherokee Nation filed notice of its right to intervene pursuant to 25 U.S.C. § 1911 to insure placement of Baby Boy A in compliance with the federal Indian child welfare statutes.

¶ 8 On July 7, 2006, the prospective adoptive parents changed attorneys, and thereafter, they were represented by their second law firm. On August 2, 2006, the prospective adoptive parents filed an objection to the Cherokee Nation's intervention.

¶ 9 In an August 28, 2006 minute order, the district court, having considered briefs submitted by the prospective adoptive parents and the Cherokee Nation, found that the

proceeding was one for adoption without consent of the putative father and not for termination of parental rights of the putative father, and as such, the Cherokee Nation had no standing to intervene in that aspect of the adoption proceedings. On November 7, 2006, the journal entry of the August 28th minute order was filed and a hearing was set for January 9, 2007, on the Cherokee Nation's request to show good cause for deviation from the federal Indian child welfare statutory preference requirements for placement of an Indian child.

¶ 10 Also on November 7, 2006, the biological father, his wife, his attorney, and the public defender appeared before the district court. The biological father executed his permanent relinquishment of parental rights and consent to the adoption of Baby Boy A and gave testimony concerning his relinquishment of parental rights and consent to adoption. The district court questioned the biological father and executed the certification/verification as required by the Oklahoma Adoption Code, 10 O.S.2001, §§ 7503–2.3 and 7503–2.4.

¶ 11 Attorneys for the prospective adoptive parents, the birth mother, Baby Boy A, and the Cherokee Nation appeared at the good cause hearing held on January 29, 2007. The district court ruled that the natural parents' unified voice consenting to the adoption of Baby Boy A constituted good cause to deviate from the federal statutory placement preferences. The Cherokee Nation filed a motion to reconsider asserting that the hearing was not actually a good cause hearing. In a supplemental ruling, the district court found that the Cherokee Nation had the opportunity to produce evidence as to the lack of good cause, but did not do so. The Cherokee Nation appealed. This Court dismissed the appeal for lack of an appealable order.[3]

adopted by all fifty states, the District of Columbia, and the Virgin Islands, the receiving state must approve the placement of the child before the sending state permits the out-of-state placement.

**3.** *In the Matter of B.B.A*, No. 104,730, was dismissed by unpublished order filed September 24, 2007. The Cherokee Nation filed an appeal from

the final decree of adoption, raising the good cause question. In this second appeal by the Cherokee Nation, the Court of Civil Appeals affirmed the district court ruling. *In the Matter of B.B.A., Minor Child*, 2009 OK CIV APP 80, 224 P.3d 1285. The Cherokee Nation did not seek certiorari review.

¶ 12 Hearing on the final decree of adoption was set for May 16, 2007. The day before the hearing, the biological father revoked his relinquishment of parental rights and consent to adoption. The prospective adoptive parents objected to the revocation and, on July 5, 2007, filed an application to terminate the biological father's parental rights and to determine the child eligible for adoption without his consent. The biological father changed attorneys, and on July 9, 2007, the district court set dates for depositions of the biological father and his wife, the pre-trial conference, and the trial.

¶ 13 On January 9, 2008, the biological father stipulated that he did not contribute to the support of the birth mother during her pregnancy; he did not pay any medical expenses for the birth of the minor child; he had not contributed to the minor child's support; and based upon these facts, his parental rights should be terminated and his consent to the adoption is not required. The district court entered an order adjudicating Baby Boy A eligible for adoption without consent of the biological father.

¶ 14 On January 30, 2008, the district court appointed the Oklahoma County Public Defender to assist the court in reviewing the adoption-related expenses in accordance with a local court administrative directive.[4] In April of 2008, the prospective adoptive parents filed their affidavit, amended affidavit, and addendum to affidavit disclosing a total of $98,161.71 expended for adoption-related fees, costs, and expenses: $3,536.70 for their home state law firm, $65,189.51 for the second law firm, $13,362.50 for birth mother's attorney, $13,000.00 for a private investigator, and $3,073.00 for a home study and updates. The prospective adoptive parents' first law firm also filed an affidavit disclosing a total of $36,068.86 adoption-related expenditures, which included $20,000.00 for their attorney fees, $12,498.36 for birth mother's living expenses, $917.50 for medical expenses, $153.00 for the adoption filing fee, $2,500.00 for the Interstate Compact on Placement of Children fee, and other miscellaneous expenses.

¶ 15 The public defender objected to the reasonableness of the expenditures, urging the district court to reject the second law firm's minimum fifteen-minute charge for a phone call, to reduce the second law firm's hourly rate charged for traveling to and from the court house, to reduce the number of hours the second law firm charged for a six-page brief, and to reject the first law firm's flat fee that was not based on actual time worked. The public defender asked the district court to determine a reasonable amount of attorney fees for each attorney using the criteria set out in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, and the Oklahoma Rules of Professional Conduct, Rule 1.5, 5 O.S.2001, ch.1, app.3-A. The public defender also objected to the private investigator's fee, arguing that it is not an allowed expenditure under the controlling statute.

¶ 16 On June 10, 2008, the district court heard testimony from an attorney with the first law firm and arguments on the public defender's objections. The district court acknowledged that the amount of expenses in this case gave him pause, but he found that in the absence of objection by the people paying the expenses, the contracts are reasonable, and he concluded that the public defender had the burden to produce evidence showing the adoption-related expenditures to be unreasonable. The district court approved the prospective adoptive parents' expenditures in two separate orders: one order approved the $36,068.86 disclosed by the first law firm, and the other approved the $98,161.71 disclosed by the prospective adoptive parents' affidavit. The Oklahoma County Public Defender appealed the two orders, contending that the party seeking approval of fees, costs, and expenses has the burden to prove reasonableness under the criteria set out in *Burk* and Rule 1.5, and the trial court

---

4. The administrative directive is not in the record on appeal. However in the hearing on June 10, 2008, the district court explained that it was in response to a grand jury investigation, and it required the appointment of the public defender to assist the court in reviewing adoption-related costs and expenses and to advocate for strict compliance with the law. It is likely the district court was referring to the administrative directive described in the concurring opinion in *Matter of the Adoption of Baby G.*, 2008 OK 92, ¶ 4, 195 P.3d 377, 380 (Kauger, J., concurring).

has the duty to independently determine the reasonableness of adoption-related expenditures.

¶ 17 On July 29, 2008, the district court entered the final decree of adoption, and also entered an order approving the expenditure of $13,058.85 for additional attorney fees and expenses for the second law firm. The Oklahoma County Public Defender filed an amended petition in error for appellate review of the order approving additional expenditures.[5] The Court of Civil Appeals affirmed the district court orders. The public defender petitioned for certiorari review.

¶ 18 On certiorari, the public defender asserts that the term "reasonable" as used in the Section 7505-3.2 of Title 10 of the Oklahoma Statutes requires an independent judicial examination of the fees, costs, and expenses and a determination of reasonableness based upon the prospective adoptive parents' proof. The public defender's certiorari arguments present the two first impression questions raised in the petition in error: 1) Does § 7505-3.2 impose a duty upon the district court to inquire into the reasonableness of each and every expense item for which the prospective adoptive parents expended money in connection with the adoption? 2) Does § 7505-3.2 require the prospective adoptive parents to submit proof that all fees, costs, and expenses paid in connection with the adoption are reasonable? We previously granted the petition for certiorari review.

## II. Standard of Review

¶ 19 The standard of review of the reasonableness of the attorney fees is abuse of discretion whether the appellate court is reviewing attorney fees awarded by the court, *Burk v. Oklahoma City,* 1979 OK 115 at ¶ 19, 598 P.2d at 663, or attorney fees charged pursuant to an attorney/client contract. *Robert L. Wheeler, Inc. v. Scott,* 1989 OK 106, ¶¶ 5–6, 777 P.2d 394, 395. The reasonableness of expenses is also reviewed for abuse of discretion. *Pierce Couch Hendrickson Baysinger & Green v. Freede,* 1997 OK 33, ¶ 29, 936 P.2d 906, 913. The appellate court will reverse for abuse of discretion where the lower court ruling is without a rational basis in the evidence or where it is based upon an erroneous legal conclusion. *Thomas v. E-Z Mart Stores, Inc.,* 2004 OK 82, ¶ 7, 102 P.3d 133, 136.

¶ 20 The first impression questions argued on certiorari are questions of statutory construction. Statutory construction is a question of law subject to *de novo* review in the appellate court. *St. John Medical Center v. Bilby,* 2007 OK 37, ¶ 2, 160 P.3d 978, 979. *De novo* review is plenary, independent, and non-deferential to the lower courts. *Id.*

## III. Section 7505-3.2 of Title 10 of the Oklahoma Statutes imposes a duty upon the district court to conduct a thorough inquiry into each and every expenditure made in connection with the adoption and the supporting evidence and to determine the legality and reasonableness of the expenditures.

¶ 21 Oklahoma has a strong public policy against buying or selling children for adoption. The anti-trafficking in children statutes, 21 O.S.2001, §§ 865–869, as amended, make it a crime to accept, solicit, offer, pay, or transfer anything of value in connection with an adoption except as allowed in 10 O.S.2001, § 7505-3.2, as amended.[6] Section

---

5. The final decree of adoption is not on appeal.

6. In 1997, the Legislature enacted substantial changes to the Oklahoma Adoption Act, renumbering, recodifying, and renaming it the Oklahoma Adoption Code.1997 Okla.Sess.Laws, ch. 366 (codified at 10 O.S.2001, §§ 7501–1.1–7510–3.3). Section 7505-3.2 was enacted as part of the Oklahoma Adoption Code. *Id.* § 25. It authorized expenditures in connection with an adoption, required prospective adoptive parents to disclose all expenditures in connection with the adoption, and required court approval of all

such expenditures. Prior to 1997, disclosure of expenditures was required in 10 O.S.1991, § 60.12, and expenditures for medical, legal, child-placing, and investigation and counseling services were exceptions to the crime of trafficking in children specified in 21 O.S.1991, § 866(4).

In 2005, the Legislature amended § 7505-3.2, adding language allowing the birth mother's expenses for housing, food, clothing, utilities, and other necessities to be paid in connection with an adoption. 2005 Okla.Sess.Laws, ch. 57, § 2. Be-

7505–3.2(A) requires the prospective adoptive parents, prior to a final decree of adoption, to disclose by affidavit all fees, costs, and expenses and all funds or monies expended or expected to be expended in connection with the adoption. 10 O.S. Supp.2009, § 7505–3.2(A)(1). Subsection A requires the district court to review the prospective adoptive parents' affidavit and decide whether all costs and expenses have been disclosed, whether the fees, costs, and expenses are reasonable, and whether any expenditure violates the anti-trafficking in children statutes. *Id.* § 7505–3.2(A)(2). The subsection also requires the district court to disapprove in writing and order reimbursement of any expenditure by the prospective adoptive parents that is determined to be unreasonable or in violation of the anti-trafficking in children law. *Id.*

¶ 22 The fees, costs, and expenses for which the prospective adoptive parents may pay money, property, or other thing of value, are listed in § 7505–3.2(B)(1)(a–h):

a. reasonable attorney fees and court costs,

b. reasonable medical expenses for birth mother and minor to be adopted,

c. reasonable adoption counseling expenses for birth parents before and after the birth of the minor, not to exceed six (6) months from placement of the minor,

d. reasonable fees of a licensed child-placement agency,

e. reasonable living expenses for housing, food, clothing, utilities, and other necessities of the birth mother that are incurred during the adoption planning process or during the pregnancy, not to exceed two (2) months after the birth of the minor or after the consent or relinquishment of the birth mother,

f. reasonable costs for travel or transportation of the birth mother or minor as same is incurred for medical or adoption placement needs,

g. reasonable expenses for a home study, and

h. reasonable expenses legally required by any governmental entity related to the adoption of a minor.

Subsection B also permits the court to approve other adoption-related costs and expenses needed due to unusual circumstances. *Id.* § 7505–3.2(B)(4). The Oklahoma Comments to § 7505–3.2 indicate that the district court may **only** approve those adoption-related expenses listed in § 7505–3.2 and those ordered by the court due to unusual circumstances.

¶ 23 The district court's duties under § 7505–3.2 are unmistakable.[7] Section 7505–3.2 clearly mandates a thorough and rigorous inquiry into the adoption-related expenditures by the district court as part of the adoption proceedings. The obvious goal to be achieved by this mandated district court inquiry of expenditures in connection with an adoption is to thwart the subtle as well as the apparent buying and selling of children.[8]

---

fore the 2005 amendment, living expenses for the birth mother were allowed only in cases of extraordinary need.

In 2009, the Legislature amended § 7505–3.2, adding language requiring disclosure of adoption-related cost and expense statements from attorneys, child-placing agencies, or persons facilitating in a direct-placement adoption. 2009 Okla.Sess.Laws, ch. 107, § 2. The provisions of § 7505–3.2 applicable here were in the 2005 version and were not changed in the 2009 version. This opinion cites the latest version of § 7505–3.2, which is set out in full in the appendix to this opinion.

7. There is no need for statutory construction where the statute's language is plain and unambiguous and the meaning is clear and unmistakable. *Strong v. State ex rel. The Oklahoma Police Pension,* 2005 OK 45, ¶ 8, 115 P.3d 889, 893.

8. Before the 1997 enactment of the Oklahoma Adoption Code, 21 O.S.1991, § 866(4) excluded from the crime of trafficking in children those payments that had been **approved by the court** for hospital and medical costs, reasonable attorney fees, licensed child-placement fees for investigation, and counseling. The 1997 amendment to § 866 excluded the costs and expenses listed in § 7505–3.2 from the crime of trafficking as long as the petitioner or birth mother complies with § 7505–3.2. 1997 Okla. Sess. Laws ch. 366, § 57. Section 866 indicates that the buying and selling of children is prevented by court approval of adoption-related expenditures.

In 2006, the Legislature amended § 866, clarifying the definition of the crime of trafficking in children, including advertising within the crime, and declaring the crime to be a felony. 2006 Okla. Sess. Laws, ch. 415, § 41. Section 866 was also amended in 2009 to include the receipt

¶ 24 Accordingly, we conclude that the district court, in its review of the prospective adoptive parents' affidavit of expenditures, must thoroughly examine each and every expenditure disclosed by the affidavit and the evidence offered in support of the expenditure, and determine the legality and reasonableness of each expenditure. Before approving the prospective adoptive parents' expenditures, the district court must be satisfied that all expenditures have been disclosed and that the expenditures are authorized by § 7505–3.2. If an expenditure is not specifically listed in § 7505–3.2(B) or has not been previously authorized based upon a finding of unusual circumstance by the court, the district court must, in writing, disapprove the expenditure and order reimbursement. If an expenditure is not reasonable, it is not in compliance with § 7505–3.2(B), and the district court must, in writing, disapprove the expenditure and order reimbursement.

**IV. Section 7505–3.2 of Title 10 of the Oklahoma Statutes requires that adoption-related fees, costs, and expenses approved by the district court should be commensurate with customary fees and expenses; and it leaves the district court with the discretion to approve an amount of adoption-related attorney fees determined under relevant *Burk* criteria.**

¶ 25 The public defender urges that the reasonableness of the attorney fees and expenses charged the prospective adoptive parents should be determined using the criteria in Rule 1.5, Oklahoma Rules of Professional Conduct, 5 O.S.2001, ch.1, app.3–A, and *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659. Under Rule 1.5, attorneys have the professional responsibility not to make an agreement for, charge, or

collect unreasonable fees or expenses. Rule 1.5 lists eight factors to be considered in determining the reasonableness of the contract, charge, or fee. *Burk* listed the same eight factors for determining the amount of an attorney fee to be awarded by the court.[9]

¶ 26 *Burk* considered the reasonableness of an attorney fee award to be paid out of an equitable fund. *Burk* established a two-part reasonableness test: 1) a base fee calculated by multiplying hours worked by an hourly rate, and 2) a bonus or incentive fee calculated under the eight factors listed in Rule 1.5. This Court has used the *Burk* criteria in cases where there was no equitable fund and no incentive or bonus fee. In *Southwestern Bell Telephone Co. v. Parker*, 1987 OK 16, 737 P.2d 1186, the telephone company sued to collect $3,867.00 on a yellow pages advertising contract, and before trial, it accepted Parker's offer to a confessed judgment of $1,500.00. The plaintiff recovered a judgment by confession under § 1101 of Title 12 of the Oklahoma Statutes and was a prevailing party for purposes of attorney fees under § 936 of Title 12 of the Oklahoma Statutes. In applying the *Burk* criteria, *Parker* relied on several cases that had applied the *Burk* criteria in determining the reasonableness of attorney fee awards: *Professional Construction Consultants, Inc. v. State*, 1982 OK 61, 646 P.2d 1262, involving a § 936 attorney fee; *Matter of Estate of Bartlett*, 1984 OK 9, 680 P.2d 369, involving an attorney fee for representation of the administrator in probate in connection with the preservation of the estate; and *Briscoe v. Harper Oil Co.*, 1985 OK 43, 702 P.2d 33, involving an attorney fee for damages to real property.

¶ 27 The *Burk* criteria are the standard by which our courts test the reasonableness of attorney fee contracts as well as attorney fee awards. We applied the *Burk* criteria to

---

of money from more than one prospective adoptive family for a minor child in the crime. 2009 Okla. Sess. Laws, ch. 107, § 4. This opinion cites the latest version of § 866.

**9.** Generally referred to as the *Burk* criteria, the eight factors are: 1) time and labor required, novelty and difficulty of the questions involved, and skill requisite to properly perform the legal services; 2) if apparent to the client, the likelihood the representation will preclude other employment by the attorney; 3) customary charge in the community for similar legal services; 4) amount involved and results obtained; 5) time limitations imposed by the client or the circumstances; 6) nature and length of the professional relationship with the client; 7) the experience, reputation, and ability of the attorney performing the legal service; and 8) whether the fee is fixed or contingent.

determine the reasonableness of attorney fees charged pursuant to a contract to defend against a mortgage foreclosure, *Robert L. Wheeler, Inc. v. Scott,* 1989 OK 106, 777 P.2d 394, and to calculate a reasonable amount where there was a contingent fee agreement. *Oliver's Sports Center, Inc. v. National Standard Insur. Co.,* 1980 OK 120, 615 P.2d 291, 295; *Morgan v. Galilean Health Enterprises, Inc.,* 1998 OK 130, ¶ 14, 977 P.2d 357. *Morgan* made it clear that an attorney fee must be reasonable in every case whether the fee is paid by the client or by the losing litigant. 1998 OK 130 at ¶ 14, 977 P.2d at 364.

■ ¶ 28 Section 7505–3.2(B)(1)(a–h) expressly allows the prospective adoptive parents to pay reasonable attorney fees, as well as reasonable charges for medical services, counseling services, living and travel expenses, child-placement fees, and home investigation expenses in connection with the adoption. Section 7505–3.2(A)(2) expressly requires the district court to determine that the fees, costs, and expenses paid in connection with an adoption are reasonable. The statute does not permit a presumption that the attorney/client contract is reasonable. In an adoption proceeding, the district court must determine the reasonableness of the written or oral attorney fee contract and the reasonableness of the amount of attorney fees and expenses charged.

■ ¶ 29 Section 7505–3.2(B)(2) provides that "(i)n addition, all expenses approved by the court should be commensurate with other customary fees for similar services by persons of equivalent experience and training where the services are performed." This language contemplates that the district court, in determining reasonableness of the fees, costs, and expenses, will measure the fees, costs, and expenses listed in § 7505–3.2(B)(1)(a–h) or authorized by the district court upon a finding of unusual circumstance by the customary fees and expenses in the community. The district court must consider the customary fees and expenses in the community.

¶ 30 Although "customary fees" is one *Burk* criterion, we glean no legislative intent in § 7505–3.2 to exclude other relevant *Burk* criteria from the court's consideration of the attorney fees. Reading the language in § 7505–3.2(B)(2) in its ordinary sense,[10] the word "should" expresses an obligation rather than a strict command[11] and the words "customary fees" indicate fees that are grounded in common tradition and commonly charged as a matter of course.[12] The *Burk* criteria are deeply entrenched in the awarding of attorney fees and the testing of reasonableness of attorney fee agreements. An attorney fee determined under relevant *Burk* criteria is within the ordinary meaning of "customary fees" as used in § 7505–3.2(B)(2).

¶ 31 In addition to being satisfied that the prospective adoptive parents' expenditures are reasonable in amount, the district court must be satisfied that the expenditures are reasonably related to or connected with the adoption. Section 7505–3.2 repeatedly utilizes "adoption-related" and "in connection with the adoption" to modify expenses and expenditures, for instance "in connection with the adoption of a minor" in § 7505–3.2(A)(1), "adoption-related costs and expenses" and "pay in connection with an adoption" in § 7505–3.2(B)(1), "additional costs and expenses in connection with an adoption" in § 7505–3.2(B)(4), and "payment of adoption-related expenses" in § 7505–3.2(D)(2).

■ ¶ 32 Accordingly, we conclude that under 10 O.S.Supp.2009, § 7505–3.2, in approving the prospective adoptive parents' expenditures in connection with the adoption, the district court must determine whether the expenses and services were reasonably related to the adoption and the amounts paid for the expenses and services were commensurate with the customary fees and costs for

---

10. "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, ...." 25 O.S. 2001, § 1.

11. The ordinary meaning of "should," the past tense of "shall," expresses a condition or obligation from a point of view in the past. *Webster's Third International Dictionary of the English Language Unabridged* 2104 (2002).

12. *Id.* at 559.

similar services by persons of equivalent experience and training where the services are performed. We further conclude that the district court has the discretion to approve an amount of adoption-related attorney fees determined under relevant *Burk* criteria.[13]

## V. The prospective adoptive parents have the burden to prove to the district court that all monies they paid or expect to pay in connection with the adoption were for reasonable fees, costs, and expenses listed in 10 O.S. Supp.2009, § 7505–3.2 or were authorized by the court upon a finding of unusual circumstance.

¶ 33 By filing their affidavit disclosing adoption-related expenditures, the prospective adoptive parents moved the district court to find that the expenditures are reasonable and to approve the expenditures. Generally, a moving party has the burden to provide the court with both the legal and evidentiary support for the relief sought. *Sloan v. Owen,* 1977 OK 239, ¶ 9, 579 P.2d 812, 814 (burden of proof of witness fees on moving party). Regarding attorney fees, we have long held the party moving for an attorney fee to the duty of demonstrating the reasonableness of the fee to the trial court. *Prager's Paris Fashion v. Seidenbach,* 1925 OK 761, 242 P. 260, 263, concluded that plaintiffs' cause of action was predicated on an obligation providing for the recovery of reasonable attorney fees, plaintiffs had the duty to show that the amount of attorney fee they paid or became liable to pay was the usual customary fee paid for such services and the amount was reasonable, and the burden did not shift to the opposing party to show that such fee was unreasonable. *Security Nat. Bank of Enid v. Bonnett,* 1980 OK CIV APP 63, ¶ 9, 623 P.2d 1061, 1064 (approved for publication by the Supreme Court), explained that parties are free to contract for a reasonable attorney fee, but if the fee is challenged as excessive or exorbi-

tant, the trial court must take evidence as to the reasonableness of the fee and fix an attorney fee that is reasonable and commensurate with the work performed by the attorney.

¶ 34 *Burk's* guidance to the members of the bar squarely placed the duty on the attorney seeking an attorney fee award to produce detailed time records and evidence of reasonableness not only in equitable fund cases, but in every case:

Hereafter, attorneys in this state should be required to present to the trial court detailed time records showing the work performed and offer evidence as to the reasonable value for the services performed for different types of legal work. Reasonable value of services should be predicated on the standards within the local legal community. This will enable trial courts to remove the fixing of attorney fees, not only in this type of action, but in every case, from the realm of speculation and guesswork into the area of simple mathematical computation. The trial court may then, with certainty, determine the compensatory fees.

*Burk,* 598 P.2d at 663.

¶ 35 Following the *Burk* decision, *Oliver's Sports Center, Inc.,* 1980 OK 120, at ¶ 8, 615 P.2d at 295, reiterated that an attorney seeking an attorney fee has the burden to present to the court detailed time records of the work performed and evidence of the reasonable value for the services performed for different types of legal work. *Oliver's Sports Center* reasoned:

The general agreement in all jurisdictions is that the time and labor spent by the attorney in performing services for which compensation is sought is an important factor to be considered in setting a reasonable fee. However, it is also commonly agreed that the time element must be considered in connection with other factors. Fees cannot fairly be awarded on the

---

13. In adoption proceedings, consideration of relevant *Burk* criteria to determine reasonableness of the adoption-related attorney fees is discretionary. The district court's decision not to consider other *Burk* criteria to test the reasonableness of adoption-related attorney fee expenditures would not, without more, constitute an abuse of discretion under *Spencer v. Oklahoma Gas & Electric Co.,* 2007 OK 76, ¶ 11, 171 P.3d 890, 895 (ruling that the failure to follow the *Burk* directives in awarding an attorney fee constitutes an abuse of discretion).

basis of time alone. The use of time as the sole criterion is of dubious value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation. . . . 1980 OK 120 at ¶ 6, 615 P.2d at 295. Following this reasoning, *Sneed v. Sneed,* 1984 OK 22, 681 P.2d 754, 756, and *Adams v. Unterkircher,* 1985 OK 96, 714 P.2d 193, 197, rejected a simple mathematical formula of hours multiplied by hourly rate that might reward inexperience and inefficiency and penalize experience and efficiency.

 ¶ 36 The reasonableness of attorney fees and expenses is a question for the trier of fact, *Arkoma Gas Co. v. Otis Engineering Corp.,* 1993 OK 27, ¶ 8, 849 P.2d 392, 394, and the fees and expenses must be supported by evidence and reason. *Finnell v. Seismic,* 2003 OK 35, ¶ 18, 67 P.3d 339, 346–347. Like attorney fees, the reasonableness of other fees, costs, and expenses in connection with an adoption presents a question of fact that must be supported by evidence and reason. *See Pierce Couch Hendrickson Baysinger & Green v. Freede,* 1997 OK 33, at ¶¶ 30–32, 936 P.2d at 913. Accordingly, we conclude that the prospective adoptive parents have the burden to present sufficient evidence to the district court proving that all monies they paid or expect to pay in connection with the adoption were for reasonable fees, costs, and expenses listed in 10 O.S. Supp.2009, § 7505–3.2, or expenses authorized by the court upon a finding of unusual circumstance.

**VI. The district court abused its discretion in approving the adoption-related expenditures without a thorough inquiry into the fees, costs, and expenses and without sufficient evidence establishing the reasonableness of the fees, costs, and expenses.**

¶ 37 The evidence before the district court supporting the $147,289.42 paid in connection with this adoption included: 1) the prospective adoptive parents' affidavit with an attached contract with the second law firm and the time records from those attorneys; 2) prospective adoptive parents' amended affidavit disclosing a private investigator's fee of $13,000.00 without any contract or time records attached thereto; 3) the prospective adoptive parents' addendum summarizing the private investigator's services; 4) the first law firm's affidavit disclosing fees, costs, and expenses, without any contracts, time records, receipts, or other proof of payments attached thereto; and 5) testimony from an attorney with the first law firm admitting that she did not bring her contract with the prospective adoptive parents to the hearing, that the $20,000.00 flat fee is her standard fee for an adoption, whether contested or not, and that the prospective adoptive parents did not ask for a refund when they hired the second law firm and she did not offer to refund any of the $20,000.00 fee. The record on appeal contains the summaries of the second law firm's time records which the public defender prepared to demonstrate the excessive charges. But, as detailed below, the evidence in the record on appeal is insufficient support for the district court's finding of reasonableness of the expenditures for fees, costs, and expenses, and this case must be remanded.

**a. The fees, costs, and expenses listed in § 7505–3.2(B)(1)(a–h) other than attorney fees**

 ¶ 38 The first law firm's affidavit disclosed medical-related expenses in the amount of $865.49, although the prospective adoptive parents indicated that all medical expenses were paid by an insurer, and there are no billings or receipts for payment of medical expenses. The first law firm's affidavit disclosed $389.25 for transportation expenses, but there was no showing that it was for the birth mother or the minor child for medical or adoption placement. The first law firm's affidavit disclosed $11,498.36 for living expenses of the birth mother, but presented no receipts for the expenditures. The first law firm's affidavit also disclosed expenditures in the amount of $153.00 for court filing fees, $828.00 for transcripts, process service, fingerprint search, etc., and $2,500.00 for the Interstate Compact on Placement of Children (ICPC) fee, but offered no evidence thereof. Finally, the prospective adoptive

parents' affidavit disclosed a $500.00 application fee paid to the first law firm without any explanation, and it disclosed either $1,300.00 or $1,800.00 for the home study and $1,673.00 for three post-placement reviews without any evidence regarding the customary fee in Oklahoma for these services.

¶ 39 Although the above expenses, other than the ICPC fee and the application fee, appear to be reasonably related to the adoption and reasonable in amount, a finding of reasonableness must be grounded in evidence. On remand, the adoptive parents and attorneys must offer their documentation for these expenditures and any customary fees and expenses as evidence for the district court's consideration and determination of reasonableness.

¶ 40 As to the $2,500.00 ICPC fee, the Oklahoma Department of Human Services contracts for the administration of ICPC adoption services, and there is a $250.00 fee for processing independent and private agency adoptions paid directly to the contractor. Oklahoma Administrative Code, 340:75–15–61. On remand the first law firm must prove that the $2,500.00 is a legally required governmental fee. If not, the district court must order the first law firm to reimburse the adoptive parents in accordance with § 7505–3.2(A)(1). The first law firm must also prove that the $500.00 application fee is a legally required governmental fee, and if not, the district court must order the first law firm to reimburse the adoptive parents in accordance with § 7505–3.2(A)(1).

### b. The private investigator's fee

■ ¶ 41 In regards to the $13,000.00 fee for the private investigator, § 7505–3.2 does not list fees for a private investigator as a permissible expenditure in connection with an adoption, and the district court did not determine that this adoption involved unusual circumstances necessitating the services of a private investigator. According to the

April 23, 2008 affidavit of the prospective adoptive parents, they had an agreement with the private investigator,[14] but they did not submit the agreement as evidence nor did they set forth the unusual circumstances that necessitated the private investigator's services.

¶ 42 According to his affidavit and a letter detailing his work in the case, the private investigator investigated the biological father for seventeen months, from July of 2006 through November of 2007, and tracked the whereabouts of the birth mother for six months from July through December of 2006. These purported adoption-related investigations were conducted even though the prospective adoptive parents had custody of Baby Boy A in another state, the birth mother had already twice consented to the adoption of her minor child and twice relinquished her parental rights before the district court, the birth mother and/or her attorney were participating in the adoption proceedings during the time she was being tracked by the private investigator, and the biological father and/or his attorney were participating in the adoption proceedings during the time the private investigator physically tracked and photographed both the biological father and his wife and placed GPS units on their vehicles. Further, the biological father had also relinquished his parental rights for some six months of the investigation. The record on appeal does not indicate any adoption-related need for the private investigator's physical surveillance of the birth mother and the biological father and his wife and the electronic tracking of the vehicles driven by the biological father and his wife, nor does it show that the private investigator contributed in the least to the adoption of Baby Boy A by these adoptive parents.

¶ 43 The statute, § 7505–3.2, does not specifically authorize the payment of costs and expenses of a private investigator, and the appellate record does not reveal that the

---

**14.** Apparently the agreement with the private investigator was arranged by the second law firm. What appears to be an initial retainer in the amount of $2,500.00 and an initial consultation with the private investigator are documented in the billing hours of the second law firm. Also, the second law firm billed the prospective adop-

tive parents for preparing the private investigator's written justification for his fee. At the fee hearing, the lead attorney for the second law firm announced to the district court that she represented both the prospective adoptive parents and the private investigator.

district court determined there was a need for a private investigator due to unusual circumstances in this adoption in accordance with § 7505–3.2(B)(4). The $13,000.00 expenditure for a private investigator does not appear to have any genuine connection to the adoption. These are facts, however, that should have been determined by the trial court as the finder of facts. In the absence of an order of the district court authorizing the private investigation of the biological mother and father of the minor child in this adoption case based upon a finding of unusual circumstances, on remand, the district court must disapprove the $13,000.00 expenditure and order reimbursement to the adoptive parents[15] in accordance with § 7505–3.2(A)(1).

### c. The attorney fees and expenses

¶ 44 As to the attorney fees and expenses, the affidavits disclose the following expenditures: $13,362.50 for representation of the birth mother, $20,000.00 for representation of prospective adoptive parents by the first law firm, $3,536.70 for prospective adoptive parents' attorney in their home state, and $65,189.51 for representation of the prospective adoptive parents by the *second law firm* and an additional $13,058.85 for the second law firm subsequent to the filing of the affidavit. Regarding the more than $100,000.00 in attorney fees, the district court announced from the bench:

I find the attorney fees that are cited by [first law firm], the attorney fees that are cited by [second law firm] are reasonable and I do base that primarily on the fact that it's consistent with the contracts that were entered in this case by the petitioners, and my opinion that there is no evidence to suggest that those contracts were entered into blindly or entered inappropriately or with any intent to take advantage of the petitioners or that they aren't justified by the amount of work effort that took

place in the various stages of this case. The demurrer of [second law firm] is sustained.

¶ 45 The district court presumed that the attorney fee agreements in this case were reasonable and that all the charges were consistent with the contracts. There is only one contract in the record on appeal, the second law firm's contract. The second law firm's billing statements reveal numerous charges for attorney fees and expenses that are contrary to the contract, not included in the contract, or facially unreasonable. Charging fifteen cents per copy for thousands of copies is inconsistent with the ten-cent copy charge specified in the contract.[16] Charging $275.00 an hour to prepare a document justifying the private investigator's fee is outside the contract. Charging a nearly $800.00 expense for the private investigator to deliver a proposed journal entry to the birth mother's attorney and to the Cherokee Nation's attorney is facially unreasonable. Stacking a $200.00 an hour fee for a second attorney to attend a hearing, apparently as an observer, when the contract does not specify a $200.00 hourly rate, is outside the contract. Double charging $825.00 for the hours worked in December of 2007 is facially unreasonable.

¶ 46 It is obvious that the district court did not examine the second law firm's billing statements for reasonableness. Even if the hourly rates were reasonable and the legal issues were complex, the more than seventy thousand dollars in fees and expenses for the second law firm has obvious excess. On remand, the district court must cull through the charges for legal services and reject 1) any unreasonable number of hours for the legal service performed, 2) any duplicate billings, 3) any stacking of hours for two or three attorneys to perform the same legal service, 4) the fifteen-cent copy charge, 5) the

---

**15.** If the private investigator's $13,000.00 fee is disapproved, reimbursement should be accomplished through the law firm that arranged for the private investigation. The district court should order the second law firm to reimburse the $13,000.00 to the adoptive parents and authorize the second law firm to recoup the $13,000.00 from the private investigator.

**16.** Even though some copies were charged at seven cents per page and others at fifteen cents per page, the total expenditure for copies was more than the contracted charge of ten cents per copy.

private investigator's delivery charge, and 6) any other charges the district court deems inconsistent with § 7505–3.2. As to the fifteen-minute minimum charge for a phone call and the hourly rate for travel time, the district court must determine reasonable amounts of time and reasonable rates for the type of service performed.

¶ 47 As to the first law firm's flat fee of $20,000.00, it appears to be an unreasonable charge for the routine legal services performed. The contract is not in the record, and there is no proof to show the reasonableness of the more than $36,000.00 of expenditures set out in the first law firm's affidavit. On remand, the first law firm must provide the contract and proof of the legality and reasonableness of every item charged the prospective adoptive parents so the district court can determine the reasonableness of the charges.

¶ 48 As to the birth mother's attorney, she charged some $13,000.00 for her services and expenses. The record indicates the attorney consulted with the birth mother, made two routine appearances in court for the birth mother to relinquish her parental rights and to consent to the adoption, appeared at the good cause hearing, and reported her fees to the public defender. The record on appeal indicates that this attorney was involved in the routine adoption proceedings but did not brief or argue the more complex legal issues. On remand, the birth mother's attorney must provide the district court with sufficient evidence for a determination of the reasonableness of the attorney fees.

¶ 49 In approving the attorney fee expenditures by the prospective adoptive parents, the district court began with a statement that "you would be inclined automatically to say that [the $100,000.00] is outrageous, that is certainly unreasonable." The district court then said that "this case is not like any other" and "it has generated a lot of attorney fees." Apparently, the district court viewed this adoption as a highly complex case. We do not agree. The record before us demonstrates that this case was closer to a routine adoption than a complex legal contest. On remand, the district court must focus upon whether the attorney fees were necessary

and reasonable rather than the fees that were "generated." In summary, the district court must determine, as to all attorneys whose fees and expenses were paid by the prospective adoptive parents, the necessary legal services, a reasonable number of hours needed to perform the legal services, and a fair hourly rate, or rates if different levels of skill are involved, for the legal services based on the customary charge in this state for the services and any other *Burk* criteria the court deems relevant. If the amount charged in accordance with the contract is greater than the reasonable amount, the court may approve only the reasonable fee and expenses and must order reimbursement of any excess amount in accordance with § 7505–3.2(A)(1).

## VII. Conclusion

¶ 50 Under the governing statute, 10 O.S.Supp.2009, § 7505–3.2, the district court, in approving adoption-related expenditures, must be free from doubt that the prospective adoptive parents' expenditures are reasonable and not in violation of the anti-trafficking in children statutes. Under the statute, the district court is the gatekeeper protecting the vulnerable prospective adoptive parents from excessive charges for the adoption and preventing prospective adoptive parents from making excessive payments for the adoption.

¶ 51 In this adoption proceeding, neither the prospective adoptive parents nor the several attorneys presented the district court with sufficient evidence to prove the reasonableness of the expenditures and the district court did not inquire into the reasonableness of the fees, costs, and expenses paid by the prospective adoptive parents. The district court's approval of the expenditures in this adoption proceeding is based on an erroneous legal presumption of reasonableness and it is not supported by sufficient evidence of reasonableness. Accordingly, we hold the district court abused its discretion when it approved the prospective adoptive parents' expenditures in connection with the adoption. We reverse the district court orders filed on June 10, 2008, and on July 29, 2008, and remand this cause to the district court for

further proceedings consistent with this opinion.

OPINION OF THE COURT OF CIVIL APPEALS VACATED; DISTRICT COURT ORDERS APPROVING PROSPECTIVE ADOPTIVE PARENTS' FEES, COSTS, AND EXPENSES REVERSED; CAUSE REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

EDMONDSON, C.J., TAYLOR, V.C.J., and OPALA, KAUGER, WATT, WINCHESTER, COLBERT, and REIF, JJ., concur.

HARGRAVE, J., dissents.

## APPENDIX

Section 7505-3.2 of Title 10 of the Oklahoma Statutes, with 2009 amendments shown by strikeout and underline, 2009 Okla.Sess. Laws, ch. 107, § 3, effective November 1, 2009, reads:

A. 1. An affidavit shall be attached to the petition for adoption, or may be filed after the filing of the petition for adoption, but prior to the final decree of adoption, which discloses to the court all of the costs, funds, or monies expended by the adoptive family or expected to be expended in connection with the adoption of a minor.

2. No final decree of adoption shall be entered until the court is satisfied that all costs and expenses have been disclosed, are reasonable, and that the costs and expenses do not violate the provisions of subsection B of this section. Upon its review of the affidavit of monies expended, the court shall in writing disapprove any expenditure that the court deems unreasonable or in violation of Sections 865 through 869 of Title 21 of the Oklahoma Statutes and, to the extent necessary to comply with Oklahoma law, shall order reimbursement of any consideration given in violation of Sections 865 through 869 of Title 21 of the Oklahoma Statutes. Payments made pursuant to this section shall not be a violation of Sections 865 through 869 of Title 21 of the Oklahoma Statutes.

B. 1. Except as otherwise specifically provided by law, the following list of adoption-related costs and expenses specified in this paragraph may be deemed proper items for a person to pay in connection with an adoption:

a. reasonable attorney fees and court costs,

b. reasonable medical expenses for birth mother and minor to be adopted,

c. reasonable adoption counseling expenses for birth parents before and after the birth of the minor, not to exceed six (6) months from placement of the minor,

d. reasonable fees of a licensed child-placement agency,

e. reasonable living expenses for housing, food, clothing, utilities, and other necessities of the birth mother that are incurred during the adoption planning process or during the pregnancy, not to exceed two (2) months after the birth of the minor or after the consent or relinquishment of the birth mother,

f. reasonable costs for travel or transportation of the birth mother or minor as same is incurred for medical or adoption placement needs,

g. reasonable expenses for a home study, and

h. reasonable expenses legally required by any governmental entity related to the adoption of a minor.

2. In addition, all expenses approved by the court should be commensurate with other customary fees for similar services by persons of equivalent experience and training where the services are performed. Any services provided outside this state shall be allowed in an amount as if the services had been performed within the State of Oklahoma.

3. The provisions of this subsection shall apply to living and transportation expenses incurred after the biological mother of the minor contacts the child-placing agency or attorney for adoption services.

4. The provisions of this subsection shall not prohibit a court from extending any time period, or including any additional costs and expenses in connection with an adoption oth-

er than those specified in this subsection based on unusual circumstances or need.

5. Except as otherwise ordered by the court except for good cause shown, all payments made pursuant to this section shall be paid directly to the third-party provider of services or goods.

C. Any person desiring to pay living and transportation expenses to or on behalf of a birth parent is authorized to expend an initial amount not to exceed Five Hundred Dollars ($500.00) for such costs and expenses without first obtaining court approval as required by paragraph 1 of subsection D of this section. Any such costs and expenses shall be disclosed as is otherwise required by the Oklahoma Adoption Code.

D. 1. Except for the amount authorized by subsection C of this section, the payment of any living or transportation expenses for benefit of the birth mother as authorized in subparagraphs e and f of paragraph 1 of subsection B of this title shall be approved in advance by the court.

2. The person, attorney, or licensed child-placing agency desiring to pay living or transportation expenses on behalf of a birth mother which exceed the amount in subsection C of this section shall file a petition for an order approving payment of adoption-related expenses.

3. The petition for an order approving payment of adoption-related expenses ~~may~~ shall be filed in the district court where the ~~birth mother resides, in the county where the~~ petitioner, attorney, or child-placing agency is located, or in the county where the adoption petition is to be filed, as provided in Section 7502–1.2 of this title.

4. The petition shall be captioned: "In the matter of Baby (name)." The petition shall include a listing of all anticipated living or transportation expenses to be paid on behalf of the birth mother for which court approval is being sought. If additional expenditures not previously authorized by the court are needed on behalf of the birth mother, an amended petition may be filed with the court.

5. The petition shall be heard by the court within ten (10) days of filing. The court clerk shall charge the same cost for a petition for payment of expenses as is charged for the filing of an adoption petition. In the event an adoption petition is later filed in the same county, the adoption petition shall be filed as an amended petition within the same case in which payment for expenses was approved and no additional court costs shall be required. In the event a petition for preadoption termination of parental rights is later filed in the same county, the court clerk shall not assess an additional filing fee and may use the same case number as for the petition for adoption.

6. Any order authorizing payment shall be attached to a petition for adoption. If no adoption petition is filed, the court shall retain jurisdiction to enter any orders deemed appropriate regarding the reimbursement of costs and expenses paid. If the child is placed for adoption outside the State of Oklahoma, any such order shall be submitted to the Interstate Compact of the Placement of Children and to the court in the other state where the petition for adoption is to be filed.

E. 1. In addition to the adoptive family affidavit requirement of subsection A of this section, a Disclosure Statement of Adoption-related Costs and Expenditures shall be prepared in writing by the attorney, child-placing agency, or person facilitating in a direct-placement adoption. The Disclosure Statement of Adoption-related Costs and Expenditures shall include a declaration of all fees, expenses, and costs charged or expected to be charged for the adoption including, but not limited to, the following:

a. retainer fees, the hourly rate, and the number of hours billed for the adoption,

b. any fee charged for preplacement or other home studies of any prospective birth parents, regardless of whether the home study was performed by an outside agency,

c. any costs, fees or expenses or any other thing of value paid to or on behalf of the birth parents related to the adoption of a minor by any party other than the adoptive parents, and

d. any other fees and expenses related to the adoption not otherwise specifically listed in this section.

2. The Disclosure Statement of Adoption-related Costs and Expenditures containing true and accurate information shall be filed before the final decree of adoption is ordered in each adoption of a minor in this state. The statement shall be a public record; provided, that any information identifying the attorney, child-placing agency, or person facilitating in the direct adoption shall not be made public. In addition, the identity of the child, the adoptive parents, and the birth parents shall not be made public.