2013 OK CIV APP 63

### In the Matter of the ADOPTION OF BABY BOY L, a minor child:

**Chris Yancey, Appellant,**

v.

**Timothy and Tammy Thomas, Appellees.**

No. 110,775.

Court of Civil Appeals of Oklahoma, Division No. 1.

March 18, 2013.

Certiorari Denied June 11, 2013.

Jerry L. Colclazier, Seminole, Oklahoma, Barbara Anne Smith, Norman, Oklahoma, for Appellant.

Noel K. Tucker, Phillip J. Tucker, Amber M. Godfrey, Edmond, Oklahoma, for Appellees.

LARRY JOPLIN, Chief Judge.

¶ 1 Appellant, Chris Yancey, natural father of Baby Boy L., seeks review of the trial court's order denying his request for attorney fees and costs. Yancey asserts in this appeal that he is entitled to representation and that the adoptive parents should pay for that representation, due to his status as both a prevailing party and an indigent natural father who sought to maintain a bond with his biological child.

¶ 2 Baby Boy L was born out of wedlock on October 4, 2002. The baby's mother voluntarily surrendered him for adoption six days after birth. Yancey commenced a custody action in November 2002, when the child was one month old. The biological mother filed an application to terminate Yancey's parental rights so that an adoption could proceed without his consent. The trial court granted biological mother's request and allowed the termination of Yancey's parental rights, over his objections, based upon application of the "existing Indian family exception" and the trial court's determination that it need not comply with the Indian Child Welfare Act, despite the fact Yancey is Native American. The Supreme Court reversed the trial court's decision and the case was remanded with instructions directing the trial court to apply the Indian Child Welfare Act and a "determin[ation] that the 'existing Indian family exception' is no longer pertinent to Indian child custody proceedings in Oklahoma and even if it were, the evidence is insufficient to support a finding that the child was eligible for adoption without the consent of the father." *In the Matter of Baby Boy L.,* 2004 OK 93, ¶ 2, 103 P.3d 1099, 1101.[1]

¶ 3 After two more appeals, the trial court conducted a best interests analysis, examining transcripts from two hearings, done in 2006 and 2008, as well as a guardian ad litem report and mandates from the two later appeals. After reviewing these materials, the trial court issued an order on May 18, 2010 terminating Yancey's parental rights, finding it was in the child's best interests to remain with the adoptive parents, whom the child had known since birth. The record does not reveal Yancey was ever determined to be an unfit parent.

¶ 4 On June 21, 2010, thirty-four days after the trial court's termination of parental rights order, Yancey filed an application for attorney fees and costs, asking for prevailing party attorney fees in the amount of $136,472.47, pursuant to 12 O.S. §§ 929 and 936. In Yancey's reply to the adoptive parents' objection to his application for fees and costs, Yancey added that he was also entitled to attorney fees and costs under the terms of 10 O.S. § 7505–3.2. Yancey did not appeal the May 18, 2010 termination of his parental rights and only the May 17, 2012 denial of his requested attorney fees and costs are at issue in this appeal.

■ ¶ 5 While consideration of the reasonableness of an attorney fee is a question of fact, subject to an abuse of discretion review on appeal, whether the statute itself actually provides for payment of attorney fees and costs is a question of law, reviewed under a *de novo* standard by the appellate court. *In the Matter of the Adoption of Baby Boy A.,* 2010 OK 39, ¶¶ 19–20, 236 P.3d 116, 122.

■ ¶ 6 Yancey first claimed attorney fees should be paid as a prevailing party under 12 O.S. § 929 or § 936. While the record indicates Yancey prevailed in his initial appeal, in which the Oklahoma Supreme Court determined the "existing Indian family exception" could not be applied against him and the Indian Child Welfare Act must be applied in this case, these adoption proceedings ultimately resulted in the termination of Yancey's parental rights to Baby Boy L. Therefore, Yancey is not a prevailing party. *Cleveland v. Dyn–A–Mite Pest Control, Inc.,* 2002 OK CIV APP 95, ¶ 55, 57 P.3d 119, 131.

---

1. *In the Matter of Baby Boy L.,* 2004 OK 93, 103 P.3d 1099, corresponded to an appeal from the Cleveland County Court, Appeal No. 99,815. Two additional appeals followed after the case was remanded, Appeal Nos. 103,090 and 105,-693.

¶ 7 In addition, neither § 936 or § 929 is intended to support the award of attorney fees or costs in the context of an adoption. Section 936 specifically applies to actions for labor or services rendered or for negotiable instruments:

A. In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

12 O.S. Supp.2002 § 936(A). Section 929 is similarly inapplicable to adoption cases. Section 928 provides for costs to the successful plaintiff and § 929 provides for costs to the successful defendant "in actions for the recovery of money only, or for the recovery of specific, real or personal property." 12 O.S. 2001 § 928.[2] These statutes provide no basis for the payment of Yancey's attorney fees and costs by the adoptive parents.

■ ¶ 8 In Yancey's reply to the adoptive parent's objection to his request for attorney fees and also in his appeal, he asserts 10 O.S.2001 § 7505–3.2(B)(1)(a) allows for the payment of "reasonable attorney fees and court costs" as part of the authorized adoption-related costs and expenses:

B. 1. Except as otherwise specifically provided by law, the following list of adoption-related costs and expenses specified in this paragraph may be deemed proper items for a person to pay in connection with an adoption:

a. reasonable attorney fees and court costs[.]

However, we can find no previous Oklahoma authority that has sanctioned payment of attorney fees and court costs of a parent opposing the subject adoption under this provision. In fact, the statute's primary purpose appears to be the protection of prospective adoptive parents, with a goal of holding excessive adoption charges at bay:

The district court's duties under § 7505–3.2 are unmistakable. Section 7505–3.2 clearly mandates a thorough and rigorous inquiry into the adoption-related expenditures by the district court as part of the adoption proceedings. The obvious goal to be achieved by this mandated district court inquiry of expenditures in connection with an adoption is to thwart the subtle as well as the apparent buying and selling of children.

. . .

Under the governing statute, 10 O.S.Supp. 2009, § 7505–3.2, the district court, in approving adoption-related expenditures, must be free from doubt that the prospective adoptive parents' expenditures are reasonable and not in violation of the anti-trafficking in children statutes. Under the statute, the district court is the gatekeeper protecting the vulnerable prospective adoptive parents from excessive charges for the adoption and preventing prospective adoptive parents from making excessive payments for the adoption.

*In re Adoption of Baby Boy A,* 236 P.3d at 123 and 130.

¶ 9 The enactment of § 7505–3.2 and its development, particularly in 1997, 2005 and 2009, speak entirely to the purpose of preventing child-trafficking by restricting payments and expenditures to and on behalf of a birth parent who has consented to an adoption, making it so that an adoptive parent does not, in effect, purchase a child from the birth mother. *In re Adoption of Baby Boy A,* 236 P.3d at 122–23. Because § 7505–3.2 does not address the issue of attorney fees and costs for a party opposing adoption, it does not support Yancey's request for fees in this instance.

■ ¶ 10 In his brief on appeal, Yancey argues that 10 O.S.2001 § 7003–3.7 provides authority for the payment of his attorney fees by the adoptive parents. Section 7003–3.7 states in relevant part:

**2.** Sections 928 and 929 allowance of costs to the prevailing party does not necessarily authorize an award of attorney fees as a "cost" of litigation. *Wilson v. Glancy,* 1995 OK 141, 913 P.2d 286, 291.

A. 1. a. If the parents, legal guardian or custodian of the child requests an attorney and is found to be without sufficient financial means, counsel shall be appointed by the court if a petition has been filed alleging that the child is a deprived child or if termination of parental rights is a possible remedy; provided that the court may appoint counsel without such request, if it deems representation by counsel necessary to protect the interest of the parents, legal guardian or custodian.

b. The court shall not be required to appoint an attorney for any person other than for the parents, legal guardian or custodian of the child pursuant to the provisions of this paragraph.

10 O.S.2001 § 7003–3.7(A)(1)(a)–(b).[3]

¶ 11 First, we note the record makes several references to Yancey's need to proceed as an indigent, including an affidavit in support of his application to proceed *in forma pauperis* (September 22, 2003), a request for payment of transcripts at state expense (September 30, 2003), and a summary order finding Yancey to be "indigent at this time and eligible pursuant to title 28 [O.S.] § 152 to proceed without payment of fees and costs" (March 9, 2007).

¶ 12 Yancey's indigent status and whether or not he could pursue fees under § 152 does not require payment of his fees and costs by the adoptive parents. Yancey and the adoptive parents had conflicting interests from the outset of these proceedings, in which the adoptive parents sought termination of his parental rights. *Matter of the Adoption of B.R.B.*, 1995 OK 121, 905 P.2d 807, 810, provides an analogous example of attorney fees improperly assessed against the wrong party. In *Matter of B.R.B.*, father's current wife sought to adopt his two children without the consent of their biological mother. During the course of proceedings, the court appointed independent counsel to represent the interests of the children. At the conclusion of proceedings, the court ruled the children were eligible for adoption over mother's objections and awarded a $1000 attorney fee to

the children's attorney, ordering mother pay half the fee and father and his current wife pay the other half. The mother appealed the fee award. The *Matter of B.R.B.* court quoted the following:

> From a consideration of [§ 24], we held [sic] that when the court appoints counsel to represent a child because of a conflict of interest between his parents and guardian, the court is to direct that the county (in which the proceedings or trial is held) is to compensate the attorney out of that county's court fund, if that county does not have a Public Defender available. In counties in which a Public Defender is available, the Public Defender's office is to provide such services.
>
> Thus, parents or other litigants are not responsible for paying for the services of an attorney appointed because of a conflict of interest between parent and child. Accordingly, the trial court erred in requiring Christopher's parents to pay for the services of the appointed counsel.

*Matter of Adoption of B.R.B.*, 905 P.2d at 811 (*quoting Matter of Christopher W.*, 1980 OK 186, 626 P.2d 1320, 1323). Similarly, Yancey's indigent status did not make the adoptive parents responsible for his attorney fees under this statute.

¶ 13 In his brief on appeal, Yancey makes a passing reference within his proposition of error directed at the adoptive parents and says the trial court erred in not directing "either the court fund or the adoptive parents" to pay his costs and fees. However, the record does not demonstrate that Yancey requested fees and costs from the court fund when he presented his application for fees and costs below. He requested payment as a prevailing party. In addition, the $136,472.47 requested in Yancey's June 21, 2010 application for fees and costs corresponds to fees and costs incurred from October 31, 2002 to March 19, 2006, prior to the court's March 9, 2007 order finding Yancey indigent and eligible to proceed under 28 O.S. § 152. Because he is limited in this appeal to the issues he pursued at the court

---

**3.** The matters previously addressed in 10 O.S. § 7003–3.7 can now be largely found in 10A O.S. Supp.2011 § 1–4–306.

below, we are unable expand the scope of his attorney fee request here and address the issue of court fund payment that was not requested in the application below. *Jones v. Alpine Inv., Inc.*, 1987 OK 113, 764 P.2d 513, 515.

■ ¶ 14 Oklahoma applies the American Rule to determine if attorney fees may be recovered from the opposing party. *Matter of the Adoption of B.R.B.*, 905 P.2d at 809. Under the American Rule, "each litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract therefor between the parties." *Kay v. Venezuelan Sun Oil Co.*, 1991 OK 16, 806 P.2d 648, 650. Father has asked in this appeal that we assess his attorney fees and costs to the adoptive parents, but has failed to show that statutory authority exists for this proposition. As a result, the trial court's denial of Yancey's request for attorney fees and costs is AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.